Doane vs. Chittenden & Co.

John A. Doane, claimant, plaintiff in error, vs. S. B. Chittenden & Co. defendants in error.

[1.] Where two tenements on the same lot, worth each several thousand dollars, are both levied on and sold together to satisfy a tax execution of less than one hundred dollars, the sale is absolutely null and void.

[2.] The owner of a city lot mortgages it in 1855; in September, 1856, a tax execution is issued to collect the tax due by the mortgagor, for 1856, and sells, not the equity of redemption, but the whole property, a property worth six or seven thousand dollars, for less than one hundred.

*Held,* That the lien of the mortgage is not divested by the sale.

Claim, from Fulton. Tried before Judge BULL, at October Term, 1857.

A mortgage *fi.fa.*, bearing date 30th April, 1857, in favor of S. B. Chittenden & Co., against James T. Doane, for nineteen hundred and nine dollars and eighty-four cents, besides interest and costs, was, by the Sheriff of Fulton county, levied upon the property mortgaged. The levy was made 1st May, 1857. The mortgage was executed by James T. Doane to plaintiffs in *fi. fa.* on the 15th November, 1855, and recorded 24th November of the same year. A claim to this property was interposed by John A. Doane.

Upon the trial of the claim, the plaintiffs in *fi. fa.* (the mortgagees) offered in evidence the mortgage *fi.fa.* with the entry of the levy by the Sheriff upon the property described in the mortgage, which was "upon part of lot No. 4, in block No. 10, in the city of Atlanta, being part of land lot No. 77, in the 4th district of originally Henry, now Fulton county, fronting on Whitehall street 50 feet, and on Hunter street 140 feet 5 inches."

The plaintiff in *fi. fa.* further proved by the Sheriff, who made the levy, that James T. Doane, the mortgagor, was in possession of the property at the date of the mortgage. Here plaintiff closed.

The claimant then offered in evidence the copy of a tax *fi.*

*fa.* (the loss of the original having been proved) in favor of the City of Atlanta, against James T. Doane, for taxes due by him to said city for the year 1856, dated 1st September, 1856, with the following entries endorsed thereon:

"Levied the within *fi. fa.* on part of city lot No. 4, block No. 10, lying on Whitehall and Hunter streets, including the house lately occupied by John A. Doane, and the one at present occupied by Andrews & Miller, being part of lot No. 77, originally Henry, now Fulton county. This Oct. 28th, 1856.

B. N. WILLIFORD, Marshal."

" December 1st, 1856. The parcel of land, &c., levied on by virtue of this *fi. fa.* was this day sold by me to John A. Doane for $99 50, which I have applied in full satisfaction of this *fi. fa.*

B. N. WILLIFORD, Marshal."

"Georgia,    I, W. R. Venable, Clerk of the Superior
Fulton county.    Court of said county, do hereby certify that the within *fi. fa.*, with the entries thereon, is a true copy of the original now of record in my office. Given under my hand and official signature, this 3d December, 1856.

W. R. VENABLE, Clerk."

Claimant then offered and read in evidence a deed from Williford, the Marshal, to him, dated 3d December, 1856, conveying said lot, in pursuance of said sale. This deed was recorded 3d December, 1856, the day of its date.

Claimant then introduced B. N. Williford, who testified, that as Marshal, he levied said tax execution on said lot, 28th Oct., 1856, and sold the same to John A. Doane, for $99 50, he being, at that price, the highest bidder. Said sale was made on the 1st Monday in December, 1856. That as the entire lot consisted only of one-fourth of an acre, and covered with houses, one occupied by defendant as a store below and dwelling above, the other by Andrews & Miller, which were connected by a flight of stairs, and a floor at the head,

with doors opening into each house, and by a roof extending from one to the other—he offered the whole for sale at once, considering the lot incapable of convenient division. Both houses were not under the same roof.

Claimant further proved that the store house was worth $4000 or $5000, and the annual rent about $300 or $400. And the house occupied by Andrews & Miller about $2000, rent about $150 or $200.

Upon this testimony the presiding Judge charged the jury, that it was illegal to sell the whole property together, if the two houses were separate tenements, and one could be sold without interfering with the occupancy of the other, and that the fact of one pair of stairs running between the buildings, affording a common entrance into the upper story of each building made no difference. And that if the whole property was sold together to satisfy so small a *fi. fa.*, when a part could have been conveniently sold, the sale was void as against creditors.

His Honor further charged, that the claim or lien of the city for taxes for 1856, was superior to and had priority over any mortgage executed by, or any judgment recovered against, defendant during that year. But a mortgage executed by him, prior to that year, had priority of taxes due in and for 1856, and if they believed that the mortgage was executed by defendant previous to the year 1856, then they should find the property subject, and the sale by the marshal, even for taxes, passed no title to the purchaser, beyond the mortgagor's equity of redemption.

There was no evidence that any portion of the tax *fi. fa.* against Doane, was for taxes due on the property mortgaged.

To which charge claimant excepted.

The jury found the property subject to the mortgage *fi. fa.*

Whereupon counsel for claimant tender their bill of exceptions, and assign as error the charges above given.

J. M. & W. L. Calhoun, Ezzard & Collier, and B. H. Hill, for plaintiff in error.

T. L. Cooper, *contra.*

*By the Court.*—Lumpkin, J. delivering the opinion.

Was the Court right in ruling in this case, that the sale was void on account of its excessiveness?

We think so most clearly. Here were two tenements actually occupied by different persons, and erected for that purpose, having no necessary connection with each other, and each of which is proven to have been worth thousands of dollars, both offered for sale together to satisfy a tax *fi. fa.* of less than one hundred dollars.

By the Tax Act of 1804, no more property could be sold than was necessary to satisfy the tax *fi. fa.* and cost. If two lots of land were sold together, the sale was void; and parcels of the same tract had to be separately offered until a sufficient sum was raised to pay the amount. And to the same effect is the 14th Sec. of the charter of the city of Atlanta. (*Pamph. of Charter and Ordinances, p. 9.*) Under such enactments, which are reasonable and right, how can a sale be justified of the character of this?

But it is argued that the Marshal is the sole judge of this matter; and that his Honor Judge Bull, had no right to instruct the jury that the facts in this case did not justify the judgment of that officer.

We dissent wholly from this position. True the levying officer must judge, but still he must be guided and governed by the law as Courts are in the exercise of their discretion, and if his discretion be grossly abused, as the facts testified to by himself show it was in this case, it must be controlled and his acts set aside by those having paramount and ultimate authority to decide in this matter.

Was the Court further right, in holding that the tax lien

in this case did not override the mortgage lien?    We concur fully with the Circuit Judge that it did not.

The city charter declares that the tax execution shall only bind the property of the defendant from the date thereof. (*Pamphlet of Act of Incorporation and Ordinances, p. 9.*) Here the mortgage lien was created in the Fall of 1855; the tax was for the year 1856; property was given in, in April, 1856; and the execution is dated September, 1856.

We concur with the learned counsel for the plaintiff in error, that all property liable to be taxed shall pay taxes; and we further concur with him, that in order to ascertain who is liable we must look to the person who owns the title; and we concede further, that the title in this case was in the mortgagor, until it should be divested by foreclosure and sale. He can ask no further admissions.    What then was the law applicable to the facts of the case?    The tax was assessed on this city property.    The execution to enforce its payment issued against the mortgagor.    All this was right.    He had not parted with the title.    Nor had he been divested of it by judicial sale.    But what then?    Herein consists the fallacy of the whole argument.    In 1855, before this tax accrued, the owner had created a mortgage lien on the lot.    It could only be sold then subject to this lien, or as we usually say, whether technically accurate under our laws or not, it makes no difference, and means practically precisely the same thing, the equity of redemption only could be sold; and if in this way, the amount due could not be raised, the mortgagee under the act of 1804, was liable for and could be forced to pay the balance.    All this whole doctrine free from any perplexity, will be found in the 15th Sec. of that act.    *Cobb,* 1050.    It says, "All deeds of gift, conveyances, mortgages, sales and assignments of goods, lands, tenements, and chattels of any kind of any person whatsoever, made with an intention to avoid paying the aforesaid taxes, are hereby deemed and declared null and void; and in case any person who has mortgaged estate, real or personal, shall neglect or refuse to pay

the tax for the same, the mortgagee shall be liable to pay the same. Provided that no such sale for taxes, under this act, shall tend to affect the State's title to any property mortgaged or secured thereto."

The proviso, of course, has nothing to do with the subject. I thought it best however to quote the entire section.

Is it not obvious that the owner of property, real or personal, may *bona fide* sell, mortgage or give his estate, before the lien of the State attaches thereon? and what difference can it make to the State, whether the grantor or grantee, the donor or donee, the mortgagor or mortgagee, pays the tax? It is all the same to the public. It is manifest, that whatever confusion exists upon this subject, there is none in the law itself. It is harmonious and just.

The error in this matter consists in having sold the whole property, when the equity of redemption, or the property subject to the mortgage incumbrance, was all, that could have been sold under the tax execution against James T. Doane, and that, as the testimony shows, was sufficient to have paid the debt many times over. What connection there is between James T. Doane, the mortgagor, and John A. Doane, the purchaser of this valuable property, and claimant in this case, the record does not disclose.

That the public revenue must be collected, all agree. But the power to collect taxes, even in favor of the sovereign State, much less these municipal corporations, is not so omnipotent as counsel imagines. The authority of the government is always tempered with wisdom and justice, as well as mercy. Hence the provision in the Act of 1840, (*Cobb,* 1072,) giving to the citizen the right to claim property not subject to a tax collector's execution.

I have discussed this question as though the grant of power to this corporation to levy and collect taxes, elevated it to an equality of right with the State itself. I am very far, however, from entertaining such an opinion. On the contrary, I hold that they are amenable to the law for the abuse

of their power; and subject to judicial control, the same as individuals, except where exceptions and immunities have been conferred by the sovereign power that brought them into being.

Judgment affirmed.