24647. PIERCE *et al. v.* WHEELER *et al.*

DECIDED MARCH 24, 1936.

*W. H. Titus*, for plaintiffs in error. *Alexander & Jones*, contra.

STEPHENS, J. V. R. Wheeler and Alma E. Wheeler caused to be issued a warrant to dispossess W. M. Pierce and J. G. Pierce as tenants at sufferance. The defendants in a counter-affidavit denied that the relation of landlord and tenant existed between them and the plaintiffs, and alleged that the plaintiffs were relying for title on a sheriff's deed under a sale of the property for State and county taxes, which sale it was alleged was void by reason of an excessive levy, and therefore that the plaintiffs had no right, title, or interest whatsoever in the property. It appeared from the evidence as follows: When the property was sold for taxes the defendant W. M. Pierce occupied it under a deed from his father, as a tenant for life, with remainder in his three children, C. W., H. H.,

and Annie Mae Pierce. The tax fi. fas. for the years 1926, 1928, 1929, 1931, under which the property was sold, were issued against W. M. Pierce "and children." The tax deed made by the sheriff to H. H. Pierce, the purchaser at the sheriff's sale, was dated November 3, 1932, and recited that the land was levied on as the property of W. M., C. W., H. H., and Annie Mae Pierce under a fi. fa. for State and county taxes for the year 1926, and that the fi. fa. was issued against W. M. Pierce and children. The levy, dated November 3, 1932, recited that the property was levied on "as the property of W. M. Pierce, Charlie W. Pierce, Henry H. Pierce, and Annie Mae Pierce, and to satisfy the within fi. fa." Henry H. Pierce was the purchaser at the tax sale. He and the other remaindermen afterward conveyed by deeds all their interests in the property, including the interest acquired by H. H. Pierce under the sheriff's deed. Annie Mae Pierce, who was then Mrs. Elliot Middleton, by deed of April 15, 1933, conveyed to Virgil R. Wheeler her third undivided interest in the land. C. W. Pierce, by deed dated May 24, 1933, conveyed to Virgil R. Wheeler his third undivided interest in the land. Henry H. Pierce, the other remainderman, by deed dated December 22, 1933, conveyed the property to Alma E. Wheeler. Henry H. Pierce also, by deed dated June 5, 1933, conveyed to Virgil R. Wheeler the grantor's two-thirds undivided interest in the land, "subject to the life-estate of W. M. Pierce in the entire tract." This deed recites that it is made "for the purpose of releasing and conveying to said party of the second part all rights party of the first part has to said two-thirds undivided interest by reason of a tax deed made by G. E. Davis, sheriff, to Henry H. Pierce, on December 6, 1932," and that "said party of the second part has heretofore bought a two-thirds undivided remainder interest in said property from Mrs. Elliot Middleton and C. W. Pierce, and is hereby redeeming said interest from the operation of said tax deed."

It also appears from the undisputed evidence, that the principal amount of the taxes for 1926 was $70.04; that the total taxes, as appears from all the fi. fas., amounted to $231.08; that the market value of the property at the time of this sale was at least $2000; that it consisted of about 208 acres of farm land, the longest side of which extended along a paved highway and was easily capable of division; that 50 acres would have been more than enough to pay

the taxes when the property was sold for taxes; and that 40 or 50 acres could easily have been sold off. J. G. Pierce was living on the place as tenant of W. M. Pierce, the life-tenant, who was 73 years of age.

• The court directed a verdict for the plaintiff, and overruled the defendants' motion for new trial.

It appears conclusively from the evidence that the property, which was farm land consisting of 208 acres, worth at least $2000, the longest part of which extended along a paved highway, and from which 40 or 50 acres could easily have been sold off, or a considerable portion less than the entire 208 acres could have been sold off, for a sum sufficient to satisfy the taxes amounting to $231.08. It appears therefore that this levy was excessive and therefore void. It can be collaterally attacked in this proceeding. See *Doane* v. *Chittenden*, 25 *Ga.* 103; *Roser* v. *Georgia Loan & Trust Co.*, 118 *Ga.* 181 (44 S. E. 994); *McKenzie* v. *Pound*, 121 *Ga.* 708 (49 S. E. 689). The levy being void, the deed which conveyed the property at the sale was void, and the purchaser acquired no title to the property.

It is insisted by counsel for the plaintiffs (the defendants in error) that, since only the life-tenant is liable for the payment of the taxes, only the interest of the life-tenant passed under the tax deed of November 3, 1932, and that as the life-tenant was a very old man, and there is no evidence as to the value of the life-estate, which must have been small, it can not be determined that this levy was excessive. Counsel rely on the case of *Roddenberry* v. *Simpson*, 171 *Ga.* 715 (156 S. E. 583, 75 A. L. R. 414), in which it was held that when property is sold for taxes as the property of a tenant for life, no more than the interest of the tenant for life passes. It was stated in the opinion, however, that "If this had been a fi. fa. issued against this special property, then the sale of the property under such a fi. fa. would have conveyed the entire estate and been binding upon both the life-tenant and the remaindermen." In *Clower* v. *Fleming*, 81 *Ga.* 247 (7 S. E. 278), it was held that "When land is sold as the property of a tenant for life, both for taxes and by virtue of general fi. fas., the value of the life-estate, and not of the fee, is the test of excessive levy. Only the life-estate passes by such a mixed sale." It was stated in the opinion, that, "had the defendant owned the fee, the fee would

have passed to the purchaser in case of an omission to redeem; or, though she owned a life-estate only, the fee being levied upon, would have passed had the sale been made for the taxes of that specific property only. The sale would, in that case, have affected the remainder as well as the estate for life." See 61 C. J. 208.⁰ In the case now before the court it appears that the execution was not only against the interest of the life-tenant but against the "children" of the life-tenant, and that the levy was upon the entire property including the interest of the life-tenant and the interest of the remaindermen by name, and that the sheriff's deed, under which the plaintiffs claim, conveyed the land and recited that the land had been levied on as the property of the life-tenant and the remaindermen by name. The execution, levy, and sale clearly and without dispute apply to the entire interest in the land, and not exclusively to the interest of the life-tenant. It is without dispute clearly deducible from the evidence that the fi. fas. were issued for the collection of taxes due on this particular land. It is not insisted anywhere that these taxes were not due upon this particular land. Presumably the levying officer did his duty and acted in accordance with law. Since he levied on the entire interest in the land, including the interest of the remaindermen as well as that of the life-tenant, presumably the interests of the remaindermen were liable for the taxes as taxes due against the land. It appears from the testimony of W. M. Pierce, which is nowhere contradicted, that he had not paid the taxes on the place. It is recited in the counter-affidavit filed by the defendant that the taxes were due upon "said premises." The sale under the execution and levy purported to divest the interest, not only of the life-tenant, but of the remaindermen, and was a sale of the entire interests of the life-tenant and of the remaindermen.

Assuming that a life-estate is primarily liable for the taxes on the entire property, and that the life-estate alone should be sold for taxes, the entire property nevertheless, including the interest of the remaindermen, is subject to levy and sale for the payment of the taxes against the property if the value of the life-estate is insufficient to pay the taxes. It does not appear in this case that the value of the life-estate was sufficient to pay the taxes. The life-tenant was a man seventy-three years of age. His expectancy of life, under the Carlisle tables, at best, without any allowance be-

ing made for ill health, feebleness, etc., would be only 7.72 years. Suffice it to say that in this case the entire interest in the land, including not only the life-estate of the defendant life-tenant, but the interests of the remaindermen, were levied on and sold for the purpose of paying the taxes against the property. There is no evidence to authorize an inference that the taxes could have been satisfied out of sale of the life-estate only. So far as it appears from the evidence, the entire interests in the property, including not only the life-estate but the remainder estates as well, were liable for the taxes against the property. It appears conclusively from the evidence that the levy and sale of the entire interests, including the life-estate and the remainder interests in the entire tract of land, for the payment of the taxes was excessive. The levy being excessive, the sale was void and no title passed to any interest in the land. No title passed to the life-estate. The life-tenant, although he owned only a life-estate in the land, can certainly rely upon the invalidity of the sale by which no title to his life-estate passed. Any statement contained in *Durden* v. *Phillips*, 166 *Ga.* 689 (144 S. E. 313), to the effect that the test of the excessiveness of a levy on land for taxes, where there is a life-estate, is dependent on the value of the life-estate, was obiter, since it appeared in that case that the title of the party who claimed title to the lands which had been sold under the tax levies was derived from a source other than the tax deeds; and it was not necessary to pass upon any question as to the validity of the tax deeds.

The deed under which the plaintiffs claim, which was made pursuant to such excessive levy, is void. The evidence demanded a verdict for both the defendants, and the court erred in overruling the motion for new trial.

*Judgment reversed. Jenkins, P. J., and Sutton, J., concur.*