ANTON BINKERT *et al.*

*v.*

THE WABASH RAILWAY COMPANY.

*Filed at Springfield March 21, 1881.*

| 98 | 205 |
|---|---|
| 123 | 533 |
| 98 | 205 |
| 37a | 277 |
| 98 | 205 |
| 44a | 375 |
| 98 | 205 |
| 175 | 487 |
| 98 | 205 |
| 94a | ¹584 |
| 98 | 205 |
| 107a | ¹181 |

1. DECREE—*presumption that the evidence sustained the findings of the court.* Where no bill of exceptions or certificate of evidence is found in the record of a chancery case, the propriety of the decree must be determined exclusively from the allegations of the bill, and the facts found by the court as stated in the decree, as it must be presumed the evidence was sufficient to sustain such findings. A court of review, where nothing appears to the contrary, will indulge in all reasonable presumptions to sustain the decree of the lower court.

2. If a decree specially finds to be true every material fact in the bill, and contains no findings at all modifying the effect of the facts thus found, it will follow that if the facts charged in the bill are sufficient to sustain the decree, then the decree is not erroneous.

3. SAME—*effect of finding a chattel mortgage was a valid lien before lien for taxes attached.* Where the decree, upon a bill to enjoin the levy of a collector's warrant upon personal property of the complainant, issued upon an assessment of the same against a former owner, finds that the mortgage under which the complainant claims was a valid lien on the property prior to the assessment, and delivery of the warrants to the collector, this will amount to a finding that the mortgage was properly acknowledged and recorded, or that possession must have been taken under it before it expired, the presumption being in favor of the finding of the court.

4. SAME—*as to person not served.* A bill to enjoin the sale of complainant's personal property for taxes levied against a former owner, made the collectors of several counties defendants, among whom was the

collector of Scott county, who, by mistake, was named as Coats. There being no service on him, an amendment was made to the bill in which the name of the collector of that county was correctly given, who appeared and answered, and the cause proceeded to final decree, without question as to the regularity of the proceedings. It was objected that the decree being joint, if erroneous as to any one defendant, must be reversed as to all. But the court did not regard that the decree was against Coats, it being intended to be against the collectors only, but held, that whether it was rendered against him or not, it could not, in the slightest manner, prejudice the other defendants.

5. CHANCERY—*papers—how incorporated in the record.* A copy of a mortgage, and a stipulation of the parties that it might be used in evidence the same as the original, transcribed into the record, but neither of which is in any manner verified, is insufficient, and does not make them a part of the record; and even if they were considered, the stipulation would not make the mortgage evidence or show it was offered in evidence and considered.

6. SAME—*finding of fact not alleged, or defectively alleged.* The findings of a decree, in reference to a matter about which there is no allegation whatever, can not be sustained; but this rule does not apply to cases where the facts found by the decree have been defectively stated in the bill. Therefore, a statement in a bill, of the making of a chattel mortgage, will fully warrant the court in finding it was a valid lien, in the absence of objection to the sufficiency of the allegation.

7. SAME—*finding a mortgage a valid lien is not a mere question of law.* A recital in a decree of foreclosure, finding the mortgage to be a prior valid lien, does not render the decree erroneous, as finding a mere conclusion of law. The validity of a mortgage is frequently a mixed question of law and fact, and depending upon the existence or non-existence of other facts and circumstances.

8. TAXES—*not a lien on personal property until collector receives warrant.* The statute makes a lien for the taxes assessed upon personal property only from and after the tax books are delivered to the collector, and this lien has no reference to the property originally assessed, but it attaches to all the personal property of the tax-debtor. Therefore, if the person assessed on any article of personal property, executes a valid mortgage upon the same, or makes a valid sale thereof, before the tax books are received by the collector, the person holding under such mortgage or sale will hold the property free from any lien on the same for the taxes, and a levy upon and sale of the same for the taxes will be enjoined.

9. SAME—*of the lien on land.* The statute makes taxes assessed upon real property a lien thereon from and including the first day of May in the year they are levied until the same are paid. The tax on each tract is kept separate and distinct from the taxes on every other tract, and such

tax becomes a debt, not only against the owner, which may be recovered in a personal action, but also a charge upon that particular tract of land and no other tract.

WRIT OF ERROR to the Circuit Court of Montgomery county.

Messrs. WISE & DAVIS, for the plaintiffs in error:

A mortgage of the rolling stock of a railroad company, to be valid as to third parties, must be acknowledged and recorded as required by the Chattel Mortgage act, and runs only for two years. *Palmer* v. *Forbes et al.* 23 Ill. 301; *Hunt* v. *Bullock et al.* id. 320; *Hoyle* v. *Plattsburg and Montreal Railroad Co.* 54 N. Y. 314.

Taxes on capital stock of a corporation become a lien on all personal property of the corporation from the time the tax books are received by the collector. *Hill et al.* v. *Figley*, 23 Ill. 419.

For the purposes of taxation the mortgagor of property is the owner, and the lien for taxes takes precedence of the mortgage, as well as of all other claims and liens.

A warrant for a tax upon capital stock of a corporation creates a lien upon the franchise and intangible property superior to any mortgage thereon made prior to the assessment, even if it be not superior to any mortgage on the tangible personal property.

He who seeks equity must do equity, and the tax warrants being a lien on the franchise and intangible property, the defendant in error can not hold such property and at the same time obtain relief in equity, without payment or tender of the tax. *Mills* v. *Johnson*, 17 Wis. 598; Hilliard on Taxation, 472.

The lien of the State is superior to all liens and claims of individuals or corporations. *Atkins* v. *Hinman*, 2 Gilm. 449; *Dunlap* v. *Gallatin Co.* 15 Ill. 7; *Dennis* v. *Maynard et al.* id. 481; *Forth* v. *Pursley*, 82 id. 152; *Butler* v. *Bailey*, 2 Bay, 244; *N. and C. Bridge Co.* v. *Douglas et al.* 12 Bush, 673; *Philips* v. *Rouse*, 49 Mo. 586; *Harrington* v. *Hilliard*, 27 Mich. 271; *Gledney* v. *Deavers*, 8 Ga. 479.

Messrs. McCLERNAND & KEYES,. also for the plaintiffs in error:

A tax is a specific charge or lien upon the property, without regard to its ownership or any prior liens. *Dunlap* v. *Gallatin Co.* 15 Ill. 7; *Dennis* v. *Maynard*, id. 477.

The State, in enforcing its lien, is not limited to the interest of the tax debtor in the property, and may reach the property liable for its payment without regard to liens and transfers prior or subsequent to the assessment. Payment of the taxes due on one specific part of personal property will not release it from levy and sale for taxes upon another part of such property.

Capital stock of a corporation is taxable as personal property. *Porter* v. *Rockford, Rock Island and St. Louis Railroad Co.* 76 Ill. 561.

Defendant in error took, under its mortgage, all the personal property subject to the lien thereon for the taxes due on the capital stock and franchise, and is equitably bound to pay them.

Messrs. HAY, GREENE & LITTLER, and Mr. G. B. BURNETT, for the defendant in error:

The first point made by the plaintiff in error is that a joint decree, void as to one defendant, is void as to all. There is no decree against Coats, and the decree is not joint, but several. Each defendant may perform or refuse to perform the decree, and the others will not be responsible for his acts. Besides, a party can not assign for error that which does not affect him. *Tibbs et al.* v. *Allen*, 27 Ill. 119; *Van Valkenburg et al.* v. *Trustees, etc.* 66 id. 103; *Smith* v. *Hickman*, 68 id. 314; *Clark* v. *Marfield*, 77 id. 258; *Richards* v. *Greene*, 78 id. 525; *Hedges et al.* v. *Mace et al.* 72 id. 472; *Fonville* v. *Sausser et al.* 73 id. 451.

It is also urged that the chattel mortgage is invalid. The mortgage set out in the amended record is no part of the record. There is nothing to show it was read in evidence. To have become a part of the record it should have been pre-

served in a certificate of evidence. *Mason* v. *Blair*, 33 Ill.
194; *Eaton et al.* v. *Sanders et al.* 43 id. 435; *Walker* v.
*Casey*, 53 id. 470; *McIntosh* v. *Sanders*, 68 id. 128; *Brocken-
brough* v. *Dresser*, 67 id. 225.

When no evidence is otherwise preserved, the findings of
fact stated in the decree are conclusive. *Sheen* v. *Hogan*, 86
Ill. 16.

A tax on personal property becomes a lien only from the
time when the warrant for its collection comes into the hands
of the collector. *Hill* v. *Figley*, 23 Ill. 419; *Gormley's Ap-
peal*, 27 Pa. St. 49.

The taxes assessed upon the capital stock and franchise
after the execution of the mortgage will not divest the inter-
est of the mortgagee, and those claiming under the mortgage,
as to the other personal property included in the mortgage
upon which the taxes have been paid. *Gaar, Scott & Co.* v.
*Hurd*, 92 Ill. 315.

When the mortgage was executed the mortgagor owned
nothing more than an equity of redemption, and when the
alleged tax lien accrued it could not operate on anything
more than such equity of redemption.

Section 253 of the Revenue law declares that the taxes
assessed against real estate shall be a lien thereon from and
including the first day of May in the year in which they are
levied. But the taxes assessed upon personal property are
made a lien upon the personal property of the person assessed,
from and after the tax books are received by the collector.
Sec. 254.

Section 255 provides that each class of property may, under
certain circumstances, be made liable for taxes due upon the
other class by the same owner, but it creates no lien what-
ever. A lien may be perfected under it, by the proper steps,
but the section itself, by its own force, can not raise such a
lien. *Schaffer* v. *State*, 60 Ill. 179. See also *Hill* v. *Figley*,
23 id. 413; *Same* v. *Same*, 25 id. 158.

14—98 ILL.

The words of the statute which give a lien on personal property for the tax on other personal property, do not expressly, or by necessary implication, attempt to divest any prior lien or extinguish any interest vested in another party. The lien is given on the property of the person assessed. Sec. 354 Rev. act.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This was a bill in chancery, filed by defendant in error on the 11th of April, 1868, in the Madison county circuit court, against the plaintiffs in error as collectors of taxes of the several counties in this State through which the railway of defendant in error runs, to enjoin the collection of the taxes assessed on the capital stock of the Toledo, Wabash and Western Railroad Company for the years 1873 and 1874.

It appears from the bill and findings of the decree in this case, that the Toledo, Wabash and Western Railroad Company, on the first day of January, 1873, being then the owner of what now constitutes the railway, rolling stock, franchise etc., of the Wabash Railway Company, executed thereon a mortgage, or deed of trust, to the New York Guaranty and Indemnity Company, to secure an indebtedness of the railroad company amounting to five million of dollars, which mortgage, in a few days thereafter, was duly recorded in the several counties through which the road runs; that subsequently, in the years 1873 and 1874, this property was assessed as the property of the Toledo, Wabash and Western Railroad Company; that default having been made in the payment of the mortgage debt, legal proceedings were instituted in February, 1875, to foreclose the mortgage, and such proceedings were had that a decree was rendered directing the sale of the mortgaged property; that the property, in pursuance of the decree, was subsequently sold by a special master, and John W. Ellis, Alexander M. White and others became the purchasers; that the property was duly transfer-

red and conveyed by deed to the purchasers, and the sale and transfer approved and confirmed by the court; that the said purchasers afterwards sold and conveyed the same to defendant in error, and that since that time the defendant in error has been the owner and in the possession and control of the same; that all taxes assessed upon the tangible property had been fully paid, but that the taxes assessed upon the capital stock for the years 1873 and 1874, as above stated, were still unpaid, and that warrants for their collection were then in the hands of the collectors, which they were threatening to levy upon the property of defendant in error. Upon this state of facts, the court below perpetually enjoined the collection of the taxes in question.

The evidence upon which the decree was rendered has not been preserved. No bill of exceptions or certificate of evidence is to be found in the record. The propriety of the decree, therefore, must be determined exclusively from the allegations in the bill and the facts found by the court as they appear in the decree itself, as it must be presumed that the evidence was legally sufficient to support the findings of the court. Indeed, it is a general rule that a court of review, where nothing appears to the contrary, will indulge in all reasonable presumptions for the purpose of sustaining the decree of the lower court.

Upon an inspection of the decree, it will be readily seen that it specially finds to be true every material fact charged in the bill, and that, on the other hand, it contains no findings that, in our judgment, at all modify the legal effect of the facts thus found. It must, therefore, follow that if the facts charged in the bill, conceding them to be true, are sufficient to sustain the decree, the circuit court committed no error in rendering it.

It is conceded, in the argument, that before the assessment of the taxes in controversy, the Toledo, Wabash and Western Railway Company executed the deed of trust or mortgage through which the defendant in error claims title, on the

property now sought to be taken in satisfaction of the taxes; but it is claimed that the mortgage was neither acknowledged and recorded as a chattel mortgage, nor was possession taken of the mortgaged property until after the warrants for the collection of the taxes came into the hands of the collectors, and that, therefore, notwithstanding the mortgage, the property is liable for the taxes. But the answer to this is, that the decree specifically finds that the mortgage under which defendant in error claims was a valid lien on the property prior to the assessment and delivery of the warrants to the collectors, and if this finding of the court is true, and so we must consider it, the mortgage must have been properly acknowledged and recorded, or possession must have been taken under it, provided the statute in reference to chattel mortgages has any application to railroad mortgages, like the one in question, of which we at present express no opinion. By way of reply to this, it is said that the decree also shows that the mortgage expired on the 1st of January, 1875, and that the commencement of the suits of foreclosure and the appointment of a receiver did not occur until in the following month, and that by reason of the delay in taking possession of the mortgaged property, the lien under the mortgage was lost, and the tax lien thereupon attached. The trouble with this position is that it assumes that possession was not taken of the mortgaged property until after the warrants came to the collectors' hands, a fact which does not appear by the decree. If any of the findings of the decree were necessarily incompatible with the fact that the mortgage was a valid lien on the property before the warrants came to the hands of the collectors, the argument would have much force in it, but they are not. For aught that appears from the record, the mortgagee may have taken possession of the property at the time of the execution of the mortgage, and continued in possession till superseded by the receiver. There is no proof on this subject one way or the other, and all pre-

sumptions must be indulged in favor of the findings of the court.

Even the mortgage is not before us, to enable us to determine what, if any, provisions it contained on that subject. It is true, we find in the transcript what purports to be a copy of such a mortgage, and also what purports to be an agreement between the parties to this suit, that such copy might be used in evidence with like effect as if the original, but neither the agreement nor the supposed copy is in any manner verified except by simply being copied into the transcript by the clerk. That, as has often been held, is not sufficient, and does not make them a part of the record. The law has prescribed the manner in which this may be done when desired, but there has been no compliance with it in this instance, even if there was any intention of doing so. It is well settled that even exhibits to bills and answers, when sought to be used as evidence, when not of such character as the court will take judicial notice of their genuineness, must, like any other instruments of evidence, be satisfactorily identified and proven. But even if we were permitted to consider these instruments, there is nothing in the record to show the supposed copy was used in evidence, for the stipulation, assuming it to be one, does not make it evidence in the cause, but only authorizes it to be done if desired.

But it is further suggested, that the decree, in so far as it finds the mortgage to be a prior valid lien on the property, is not based on any allegation in the bill to that effect, and for that reason it must be regarded as both erroneous and inoperative.

It is conceded that the findings of a decree with reference to a matter about which there is no allegation whatever, can not be sustained. But this principle has no application to cases where the facts found by the decree have been merely defectively stated in the bill. There is no question as to the fact that the bill in the present case distinctly avers the making of the mortgage, and as every valid mortgage of ne-

cessity implies a lien, we are of opinion that this averment, in the absence of objections to its sufficiency, fully warranted the court, if the facts justified it, as we must presume they did, in finding the mortgage was a valid lien as stated in the decree.

It is finally objected, that the finding of the decree, in this respect, is a mere conclusion of law, and for that reason, also, it is erroneous and inoperative.

We do not regard this position tenable either. It is the constant and universal usage for courts of equity to investigate and determine, as matters of fact, questions of this character. They are known to the law as mixed questions of law and fact, and when they arise in a court of law, if required, they have to be submitted to a jury, though not precisely in the form the present question is presented.

Whether a lien is created by an instrument purporting to be a mortgage must, of necessity, depend, in every case, upon a variety of circumstances. Every condition essential to the validity of a contract, in addition to the requirements of the statute, if, as before stated, it has any application to mortgages of this kind, is involved in such an inquiry.

If, for illustration, the instrument has been obtained by fraud, proof of such fact, when set up by way of defence, will defeat the lien; and so of various other defences that might be suggested. In the case supposed, assuming the mortgage to be regular on its face, the existence or non-existence of the lien would depend, solely, upon the fact whether it had been obtained by fraud or not.

Of course, where no question is made with reference to a mortgage, except what appears on its face, the court will then say, as matter of law, whether the instrument is valid as a mortgage, or not; or, in other words, whether or not it creates a valid lien. Yet that is but an illustration of the general principle, that where the facts are conceded or definitely ascertained, the court will then determine, as matter of law, the conclusions to be deduced from them.

Whether an instrument is operative as a mortgage, or, in other words, creates a lien upon the property, is no more a mere conclusion of law, than whether a given instrument is the last will and testament of an alleged testator, or whether one claiming as heir or executor, is entitled to a particular estate. All issues of this kind present, for the determination of the court, mixed questions of law and fact. We are clearly of the opinion there is nothing in this objection.

For the purposes of taxation, so far as this controversy is concerned, we agree with plaintiff in error, there is no difference between the tangible and intangible property, and the rights of the parties to it must be determined just as though no such distinction existed.

We regard the situation of the parties precisely as if the taxes in question had been assessed upon the tangible property instead of the capital stock. If the property of the present company could be held for the taxes in the one case, it can in the other. And whether it can be held in either depends upon whether the law, by reason of the assessment of personal property, gives a specific lien upon it for the taxes, that follows it into whosesoever hands it may happen to come, until they are paid; and this really is the most important question involved in the case.

In support of the affirmative of this proposition, counsel for plaintiff in error have cited a number of cases, but, in our judgment, none of them sustain it. Most of them are cases in which the tax sought to be enforced was assessed upon real property, which is governed by principles essentially different from those which are applicable to assessments on personal property.

Under our system of taxation, and that of other States, so far as we are advised, the tax on each tract of land is kept separate and distinct from the tax on every other tract, and such tax not only becomes a debt against the owner, which may be recovered in a personal action, as in other cases, but a charge upon that particular tract of land, and no other, and

upon the payment of such tax the owner may sell and convey the same, free from all charges on account of taxes assessed against other tracts. But, in default of such payment, the law authorizes, in addition to the remedy given against the owner personally, a direct proceeding against the land itself, by which judgment may be had against it, just as though it were a person, and it may finally be sold under such judgment. Inasmuch, therefore, as the land, as well as the owner, is primarily liable for the tax, whoever purchases it or otherwise succeeds to the title, must necessarily take it subject to the charge until the tax is paid. If any such specific charge is created upon a personal chattel by reason of its assessment, it is clear the law has provided no means by which the public may know, as in the case of real property, the extent of such charge. Indeed, the very observance of the law prescribing the manner of keeping tax-books renders it absolutely impossible to even learn its extent.

So it would follow, if one, any time after assessment, though months before the taxes were due, should buy a horse, cow, or other article of property, and the party to whom it was assessed should happen, in the meantime to fail, the only way the purchaser could obtain a clear title to the property would be to pay all the personal taxes of the insolvent tax-debtor, and this, in some cases, might be equivalent to a loss of the property altogether. If such were the law, no man could know when he was safe in buying property, for the effect of it would be to create an almost infinite number of secret liens—which the law ever abhors—against which no prudence, care or foresight could protect one. Nothing but a clear, unequivocal declaration of the law-making power would satisfy us that the legislature ever intended to sanction such a state of things.

If it had been the intention of the legislature to create a specific charge upon every article of personal property, to the extent of the tax assessed on its valuation, as it has on each tract of land, some provision certainly would have been

made by which the extent of the charge could be definitely ascertained, so as to prevent great hardships and frauds upon innocent purchasers. And since this has not been done, in the absence of any express provision to that effect, we must hold that it was not the intention of the legislature to create any such charge.

We do not deem it necessary to review the various provisions of the statute that may be supposed to have some bearing on the question. To do so would lead to unwarrantable prolixity. Suffice it to say, we have carefully examined the entire Revenue act, and do not find in it a single section, clause or sentence that seems in the slightest degree to favor the view suggested, but, on the contrary, many of its provisions clearly lead to the very opposite conclusion. The whole revenue system is purely statutory, and it is well settled that all tax liens exist only by reason of positive statutory enactments.

What we have here said with reference to the inconveniences and hardships growing out of secret liens, is directed against the hypothesis that such liens, under our revenue system, have any existence until after the tax books come into the hands of the collector. Of course these same inconveniences exist to a limited extent after that time, but they are not to be extended by judicial construction.

While the right to raise revenue by taxation is necessarily inherent in every government, yet, in all constitutional governments, like ours, this right is regulated by law, and can only be exercised in the manner and for the purposes specified in the constitution and the statutes of the State.

This question is not left in doubt by our legislature. It has spoken in terms that leave no just ground for misapprehension. Section 253, of the Revised Statutes of 1874, provides as follows: "The taxes assessed upon real property shall be a lien thereon, from and including the first day of May in the year in which they are levied, until the same are paid."

The next section, 254, is in these words: "The taxes assessed upon personal property shall be a lien upon the personal property of the person assessed from and after the tax books are received by the collector."

By virtue of one or the other of these provisions every tax lien exists. The statute having in both cases fixed a definite time when the lien shall commence, is equivalent to saying it shall not commence before that time. The lien given for the personal tax has no reference to the property originally assessed, but it is a lien that attaches to all the personal property of the tax-debtor, without regard to whether it was previously assessed or not. The very wording of the section directly negatives the idea that the lien has any special reference to the previously assessed property, or that it creates any lien at all upon such property, unless it belongs to the tax-debtor at the time the tax books come to the hands of the collector. Had the legislature intended anything of that kind it would have provided that the taxes should be a lien upon the property assessed, and not, as it has, upon the property of the person assessed. When the tax books come to the collector's hands, the personal taxes at once, and not before, just like an execution, become a lien upon all the personal property which the person assessed then owns, without regard to what he may have owned when the assessment was made. This is the plain provision of the statute, and the construction now given it is in strict conformity with the previous decisions of this court.

It is further objected that the decree in this case is void as to one of the defendants, and being a joint decree it must be reversed as to all. It is admitted that counsel for plaintiff in error state the law correctly on this subject, and the only question is whether the case is brought within the principle.

The bill, after setting out the interest of the defendant in error in the property sought to be charged with the taxes, proceeds to charge that the collectors of the several counties

through which the road runs, including that of Scott county, had in their hands certain tax warrants which they were about to levy upon the property in question. The bill then charges that certain persons, naming them, are respectively collectors of these counties, among whom one John H. Coats is mentioned as collector of Scott county, and a summons was issued against him as such.

R. A. Blair, the then sheriff and collector of Scott county, returned this summons with an indorsement thereon, to the effect that the same was not served, for the reason there was not then and never had been, any one in his county answering the description of "John H. Coats, collector of Scott county."

Subsequent to this return, and without any further steps being taken to bring Coats into court, an amendment was filed to the bill, in the entitling of which the name of Robert A. Blair, the real collector, was substituted for that of Coats, and the latter's name does not further appear in the proceedings. After the substitution of Blair's name for Coats, Blair, as collector of Scott county, filed an answer to the amended bill, and the cause proceeded to decree without any question being made as to the regularity of the proceeding.

Under this state of facts we do not understand any decree was entered against Coats. The objection urged, therefore, has no foundation in fact. But even if this were not so, we do not regard the objection well taken for other reasons. It clearly appears from the record that the suit was originally instituted against Coats under a mistake of fact. The suit was brought against him in a supposed official character, which the return of the officer and the amended bill shows he did not sustain. There was really no one *in esse* answering the description of John H. Coats, collector of Scott county, and it therefore follows, whether the decree was or was not rendered against him, can not in the slightest manner prejudice the parties here complaining. The record shows

conclusively that if there be such an individual as John H. Coats, he can not, as a mere private individual, have the slightest interest in the suit that could in any manner affect the rights of plaintiffs in error, and such being the fact it is clear they have no right to complain on the ground suggested.

Perceiving no error in the record, the decree of the circuit court is affirmed.

*Decree affirmed.*

Mr. JUSTICE WALKER dissenting:

I am unable to concur in the conclusion announced in this case, or the reasoning by which it is reached. It was stipulated that copies of the mortgage and other documents therein referred to, might be read in evidence in place of the originals. They were found on file in the case, and the clerk, after copying them, certifies that the transcript thus made is a true, perfect and complete record of the proceedings in the case. It is therefore reasonable to conclude that they were read on the hearing. The bill described the mortgage, its foreclosure and the sale of the property, and its purchase by defendant in error, as grounds for the relief sought. To succeed, defendant in error was compelled to prove the existence of the mortgage as alleged, and I am compelled to believe that the copy was read in evidence. The stipulation was made to enable defendant in error to so read it, and as they could not have recovered without reading it or the original, and as the original is not on file in or among the papers in the case, and the copy is, the conclusion, to my mind, is irresistible, that the copy was read in evidence. Had a deposition been so filed the presumption would be that it was read, although there was no certificate by the court, that it had been. Then why exclude the copy of the mortgage thus found, and when it had been agreed that it might be read? In regard to reading depositions, there are no stipulations that they may be read, but the parties have a right to read them on a hearing, and because

of that right the law presumes they were read. So here, under the stipulation, complainant had the right to read the copy of the mortgage, and why not presume it was read?

On turning to the copy of the mortgage, certified by the clerk to be a part of the record, we find that it was executed and acknowledged in the State of Ohio. Nor was there any, the slightest effort to conform to the Chattel Mortgage law, either in its acknowledgment, or having it entered on the docket of the justice of the peace, where the property was situated. The property on which the tax became a lien, was personal, and was included in the mortgage, and was of the character embraced in and referred to in the Chattel Mortgage law; and the railroad was an intangible person, and derived its entire power to make a mortgage by the statute, and, in doing so, it must conform to the statute authorizing the corporation to make or receive a mortgage. A failure to do so renders it void, as it would, if made by an individual, and no reason is perceived why there should be any distinction made between natural persons and corporate bodies. If there are reasons, it is for the General Assembly, and not the courts, to allow them. The Chattel Mortgage law, in terms, embraces all mortgages on chattels. This court has uniformly held, and in many cases, that, in executing such instruments, a failure to comply with the statutory requirements renders them void as to third persons, and for the same reason I regard this mortgage as void so far as it related to personal property.

If it was void, as I think it was, although prior in date to the tax warrants, as against them the mortgagee or trustee did not acquire a superior lien. When the warrants were delivered to the collectors, they became a lien superior to that of the mortgagee, and a foreclosure could not affect that lien, as it had attached long before complainant acquired title. The warrants still remained in the hands of the collectors, but had not been executed because of restraining orders and injunctions, until after the foreclosure and sale of

the property, under the decree.    The State should not be thus deprived of the power to enforce the collection of its revenue, by such restraining orders.

I, therefore, hold that this decree should be reversed.