(No. 34266.—

FORMAN REALTY CORPORATION *et al.*, Appellees, *vs.* JOHN B. BRENZA *et al.*, Appellants.

*Opinion filed May 23, 1957—Rehearing denied September 16, 1957.*

532

KLINGBIEL, J., dissenting.

BENJAMIN ADAMOWSKI, State's Attorney, of Chicago, (L. LOUIS KARTON, FRANCIS X. RILEY, GORDON B. NASH, CHARLES D. SNEWIND, and VINCENT P. FLOOD, of counsel,) for appellants.

FRIEDLUND, LEVIN & FRIEDLUND, of Chicago, (HERBERT R. FRIEDLUND, and ELMER M. LEESMAN, of counsel,) for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The county of Cook and defendant officers appealed directly to this court from a final order of the circuit court of Cook County restraining the county of Cook and defendant officers from proceeding to collect taxes on nine parcels of property located in the county for the years 1928 to 1935. The claimed right of the plaintiffs to the injunction and the trial court's decree granting such injunction is based upon the fact that the tax judgment records in the county clerk's office are stamped paid for each of the nine parcels of land in question and that the plaintiffs, as new corporate entities which had succeeded in title to the property after 1935, were innocent purchasers protected in their title as a result of their reliance upon the official records.

The defendants have contended and do contend that the taxes were not, in fact, paid and were therefore a lien upon the properties, and that the fact that the new corporate entities were successor owners was irrelevant because they had succeeded to title as a result of a reorganization

and court decree and obtained title without real consideration passing. The defendants offered to prove only the principal of the taxes in most cases was paid and not the interest and penalties but such offer was denied by the trial court on the basis that the tax judgment records were conclusive.

Plaintiffs place almost complete reliance on the decision of this court in *Jackson Park Hospital Co.* v. *Courtney,* 364 Ill. 497. In that case the county clerk had stamped the tax judgment sale record of certain properties as paid. Thereafter a representative of a committee for the holders of first mortgage bonds, secured by trust deeds against the property, acquired title thereto by trustee's deeds from the trustee in bankruptcy for a consideration of $7500 cash. Before completion of the purchase the purchaser caused an examination to be made of the tax records in the offices of the county collector and the county clerk in respect to the property, and found the records disclosed payment. In reliance on these tax records the property was purchased and later conveyed to the plaintiff in the case. This court there held that when the clerk stamped as paid the taxes against the property in the tax judgment sale record they became paid so far as third persons were concerned and that the clerk is conclusively presumed to have complied with the law and not to have made the entry unless the taxes were actually paid. When the records were examined and showed taxes against the property as paid, the third person was justified in relying on the record. We also held that where the law requires public records to be kept, such records cannot be contradicted, added to nor supplemented by parol evidence. Under the foregoing circumstances the court decreed that the purchaser and his grantee take the property free from the tax liens. In view of the holding in the *Jackson Park Hospital Co. case,* it becomes important for us to determine in this case whether or not the plaintiffs were similarly situated.

Plaintiffs have consistently in their briefs contended that the bond holders of the Forman Realty Trust, after refusing an extension of maturing bonds, formed the Forman Realty Corporation, plaintiff in this case, and that title to the properties held by the Forman Realty Trust originally was conveyed to the Forman Realty Corporation in consideration of the release of liability on the bonds of the Forman Realty Trust. Defendants contend that said bond holders had no privity of title to the real estate here in issue with any title holder and did not rely upon the tax judgment records in purchasing the securities but that the same owners of title remained in possession of all of the assets from 1930 to date, the various corporations merely changing names. To understand the true factual situation it is necessary to recite the history of these properties in some detail.

Defendants claim that for the years 1928 to 1935 some portion of taxes, penalties, interest or costs have not been paid on nine pieces of property belonging to the plaintiffs. Prior to 1930 George M. Forman and Company, a Delaware Corporation, had underwritten or marketed some 29 issues of certain bonds secured by mortgages upon real estate, many of which by 1930 were in default. Certain stockholders of George M. Forman and Company and the original trustees under a declaration of trust, desiring to protect the interest of the holders of the bonds and to protect and conserve the properties securing the issues of said bonds, did on August 26, 1930, create a common-law trust under a declaration of trust known as Forman Realty Trust. There was deposited with the Forman Realty Trust defaulted bonds underwritten or marketed by George M. Forman and Company, and the Forman Realty Trust, in exchange, issued its collateral trust bonds together with one common share. All bonds of the issues underwritten and marketed by George M. Forman and Company and deposited with the Forman Realty Trust were in turn deposited

with an indenture trustee as collateral security for the collateral trust bonds. In addition to common shares of Forman Realty Trust issued to the owners or the holders of the defaulted bonds, the Forman Realty Trust also issued common and preferred shares to other persons and corporations.

The legal title to seven of the parcels here in question was held by City National Bank and Trust Company of Chicago, as trustee under certain land trusts, and the certificates of beneficial interest of each of said land trusts were issued to the Forman Realty Trust. One of the two remaining tracts was owned by Stratford-Cornelia Building Corporation and the other tract was owned by Whitehall Building Corporation. In 1935 each of said building corporations underwent section 77B bankruptcy proceedings, and were reorganized. The title of each of said corporations was transferred to Stratford-Cornelia Corporation and Whitehall Apartments Corporation, respectively, pursuant to decree of court in consideration of the stock of each of said new corporations issuing on the basis of one share of common stock for each outstanding first mortgage bond against the old corporation. Each of said corporations for all practical purposes was a wholly-owned subsidiary corporation of Forman Realty Trust.

The Forman Realty Trust sought extension, from its bond holders, of its bonds which were maturing in 1946, which was refused. As a result the matter went to court. On September 10, 1945, the superior court of Cook County in *Thomas Costello* v. *Louis M. Watson,* 34-S-8575, authorized the Forman Realty Trust to organize a new corporation to be known as Forman Realty Corporation and to assign and deliver to said new corporation the certificates of beneficial interest in the land trusts and the shares of stock it held in the Whitehall Apartments Corporation and in the Stratford-Cornelia Corporation in exchange for shares of common stock and debentures of the new corpora-

tion, such stock and debentures to constitute all of the securities to be issued by the new corporation. The stock and debentures of the new corporation, Forman Realty Corporation, received by the Forman Realty Trust, were to be pledged with the indenture trustee, with whom the certificates of beneficial interest in the land trusts and all of the shares of stock in the building corporations owned by Forman Realty Trust had been pledged as collateral for the collateral trust bonds. Pursuant to such superior court order Forman Realty Trust caused its officers to organize Forman Realty Corporation and to issue its common stock and debentures, and requested the indenture trustee to release as collateral security the certificates of beneficial interest in the land trust and the building corporation stock and to accept in substitution therefor the stock and debentures of Forman Realty Corporation. In conformity with such reorganization plan the indenture trustee released the collateral security and accepted in lieu thereof the outstanding shares of capital stock and the debentures of Forman Realty Corporation.

Thereafter in a proceeding in the superior court of Cook County entitled City National Bank and Trust Company of Chicago, as trustee, v. Forman Realty Trust, No. 45-S-18528, it was found that it would not be possible to sell the underlying property or the securities of the Forman Realty Corporation for an amount that would equal the principal amount of the outstanding 15-year collateral trust bonds but that pro-rata distribution of the debentures and stock of Forman Realty Corporation to the holders of the collateral trust bonds would result in obtaining for the bond holders of Forman Realty Trust the benefits to be obtained through orderly liquidation of the underlying properties. Such decree also found that the assets of the Forman Realty Trust constituted a trust estate for the benefit of collateral trust bond holders and that such assets did not suffice to permit any distribution therefrom to the

holders of the preferred or common shares of the Forman Realty Trust and that they should not participate in such assets. It was then ordered in said proceeding that after the satisfaction of all liabilities of Forman Realty Trust, other than its liabilities for principal and interest on collateral trust bonds, and after distribution was made of the debentures and common shares of Forman Realty Corporation to the owners of the collateral trust bonds, all remaining assets of Forman Realty Trust, if any, were the property of Forman Realty Corporation. It was further ordered as follows: "In the event it shall be determined that there exists claims against Forman Realty Trust which, in law, are entitled to priority over the collateral trust bonds, such priority claims, if not satisfied by Forman Realty Trust, are hereby declared to be liabilities of Forman Realty Corporation."

From the foregoing factual situation it seems readily apparent that at all times here in issue Forman Realty Trust and its *alter ego*, Forman Realty Corporation, or their wholly-owned subsidiary building corporations, have been the legal owners of the parcels of property in question and primarily liable for payment of tax impositions against such property. The Forman Realty Trust created the Forman Realty Corporation with the same offices and officers, and transferred to the Forman Realty Corporation all of the certificates of beneficial interest in land and stock in subsidiary corporations in exchange for all of the common stock and debentures of Forman Realty Corporation. Forman Realty Trust had, theretofore, pledged its certificates of beneficial interest in land and stock of subsidiaries with an indenture trustee as collateral security for the benefit of its bond holders. Thereafter, pursuant to court order, the certificates of beneficial interest in the lands, and stock of subsidiaries pledged as collateral security for the benefit of such bond holders, were surrendered to Forman Realty

Corporation and the common stock and debentures of Forman Realty Corporation substituted therefor. In such court proceedings it was recognized that there might be at law claims entitled to priority over the collateral trust bonds insofar as Forman Realty Trust was concerned, and the Forman Realty Corporation was declared liable to satisfy such priority claims. The record shows the bond holders to be the present owners of common stock and debentures in Forman Realty Corporation which holds the ownership to the properties here in question. At no time have such bond holders owned the beneficial interest in the parcels of real estate involved but, at the most, have had a mortgage lien thereon as security for payment of their bond holdings, which security lien is subordinate to payment of taxes. The bond holders have at no time created Forman Realty Trust or Forman Realty Corporation so far as the record discloses. It cannot be said that such bond holders are third parties owning the real-estate parcels in question who have acquired such title in reliance on the tax judgment records of the county clerk.

As to Forman Realty Corporation, it cannot under any stretch of the imagination be considered such a third party. It was formed by Forman Realty Trust pursuant to order of court with the same offices and officers as Forman Realty Trust. Forman Realty Trust transferred all of its assets to Forman Realty Corporation in exchange for all of the common stock and debentures of the Forman Realty Corporation, that being all of the securities of the company. The Forman Realty Corporation was charged with the payment of all liabilities of the Forman Realty Trust. The transfer from Forman Realty Trust to the corporation included all of the stock in the wholly-owned subsidiary building corporations.

The Forman Realty Corporation, as a matter of fact and as a matter of law, stands in the shoes of Forman Realty

Trust, charged with the payment of all of the liabilities the Forman Realty Trust was liable to pay.

From the foregoing analysis of the factual situation as it exists in this case, it is apparent that there is no third party who has purchased title to the property here in question in reliance upon the records of the tax judgment books, and the principles announced in the *Jackson Park Hospital Co. case* are not necessarily applicable. Since the effect of that decision is to deprive the county of moneys to which it is lawfully entitled, we are not disposed to extend its operation in any manner. The plaintiffs do not allege that they relied upon an examination of the records at the time of purchase. The only examination made was as late as 1953.

The revenue laws of this State, both during the years in question and at the present time, have provided as follows: "The taxes upon real property, together with all penalties, interest and costs, that may accrue thereon, shall be a prior and first lien on such real property, superior to all other liens and encumbrances, from and including the first day of April in the year in which the taxes are levied until the same are paid or until the real property is sold pursuant to any of the provisions of this Act; which lien may be foreclosed in equity, in any court of competent jurisdiction in the name of the People of the State of Illinois * * * In proceedings to foreclose the tax lien on any real property, or in petitions to enforce the same, the amount due on the collectors books against the said property shall be prima facie evidence of the amount of taxes against the said real property." Ill. Rev. Stat. 1955, chap. 120, par. 697.

The purpose of this statute is to make taxes a lien superior to all other liens without regard to priority in point of time and to continue such liens without limitation of time until taxes are paid or the lien discharged by foreclosure as provided by law. (*French* v. *Toman,* 375 Ill.

389.) The whole revenue system is purely statutory and all tax liens exist only by reason of positive statutory enactment which in Illinois is found in this section providing that taxes assessed on real property shall be a lien thereon. (*Binkert* v. *Wabash Railway Co.* 98 Ill. 205.) The State has a perpetual lien on all taxable lands within its limits which cannot be divested through changes of ownership. (*Elmhurst State Bank* v. *Stone,* 346 Ill. 157.) A valid lien for unpaid general taxes is superior to a mortgage lien whether tax lien attached before or after the execution of the trust deed. (*Tubbs* v. *Dunlop,* 325 Ill. App. 53.) Annulment by *certiorari* of an abatement and error of State and county taxes by a board of supervisors leaves the tax lien in full force and subject to all remedies to enforce payment existing in the absence of abatement. *Mix* v. *People,* 116 Ill. 265.

From the foregoing statutory provisions, it clearly appears that the tax liens here in question continue in full force and effect on the property in question until the taxes, penalties, interest and costs have been paid in full.

The statutory provision above quoted, which makes the amount shown as due on the collector's books *prima facie* evidence of the amount of taxes against the real property, places the burden on the defendants in the instant case of proceeding to prove nonpayment of such taxes after the collector's books, showing the taxes in question paid, were introduced in evidence. Such collector's books, however, according to the statutes, are only *prima facie* evidence of the amount of taxes due. The facts as disclosed by the collector's books as to the amount of taxes due, if any, as to any piece of real estate, are not conclusive and do not in and of themselves resolve the question. The statute merely operates to place the burden on the person contending that the taxes due are other than as shown in the collector's books to produce competent evidence to show that the situa-

tion is otherwise. Since the law requires the county collector to keep the books as public records, such records cannot be contradicted, added to or supplemented by parol evidence. *Jackson Park Hospital Co.* v. *Courtney,* 364 Ill. 497; *City of Belleville* v. *Miller,* 257 Ill. 244; *Dunn* v. *Youmans,* 224 Ill. 34; *People ex rel. Greenwood* v. *Madison County,* 125 Ill. 334.

The abstract and record in this case disclose that the defendant offered in evidence and made the necessary offer of proof of duplicate receipts of all payments of taxes on the properties here involved and the warrant books of the county treasurer showing payment of taxes, which offer was denied on objections. Inasmuch as the offered evidence constituted public records required to be kept, they were admissible in evidence to show the proper status of taxes paid or unpaid on the parcels in question and should have been admitted.

From what has heretofore been said the trial court was in error in holding the county collector's tax judgment records to be conclusive and in denying admission in evidence of the documentary evidence to the contrary offered by the defendants.

Accordingly, the decree of the trial court is reversed and the cause is remanded for proceedings not inconsistent with the views expressed in this opinion.

*Reversed and remanded, with directions.*

Mr. JUSTICE KLINGBIEL, dissenting:

I think the judgment should be affirmed, both on principle and on the authority of *Jackson Park Hospital Co.* v. *Courtney,* 364 Ill. 497. While the State's lien for the payment of taxes may be of a superior variety, the question here concerns its existence rather than its quality. The majority opinion is predicated upon the proposition that the corporation here is essentially the same as the trust. If such proposition cannot be supported, the case must be

governed by the *Hospital* decision. In my opinion the proposition is not sustained by the facts.

The relevant facts, briefly summarized, are as follows: Prior to 1945 the beneficial interest in the real estate was owned by the shareholders of the trust. It was subject to a pledge as security for the bondholders. Upon "reorganization" the *bondholders,* numbering over 4000, received a prorata distribution of the corporation stock and thus became the real owners of the property. The former owners were divested of all interest in the trust property. The 1945 decree expressly found that "such assets do not suffice to permit any distribution therefrom to the holders of the Preferred or Common Shares of Forman Realty Trust, and that no participation in such assets can properly or lawfully be accorded them." The "alter ego" of the corporation was not the trust but the creditors of the trust. While their identities do not appear, it can hardly be assumed that they are the same individuals as its shareholders.

It is true that a mere reorganization, whereby the officers and stockholders of a corporation form another one to which its assets are transferred, does not necessarily effect a change of essential identity. (But cf. *Bruffett* v. *Great Western Railroad Co.* 25 Ill. 310.) However, where the assets are transferred to a new corporation, the stock of which is distributed to former creditors in settlement of their obligations, the new corporation is separate and distinct. The rule of substantial identity has no application. (*Wheeler* v. *Acme Harvesting Machine Co.* 175 Ill. App. 69.) Such is the situation here. The bondholders were not the owners of the trust or its assets. Their interests were antagonistic to, not identical with, those of the shareholders.

There being no substantial identity of organization the plaintiff corporation must be deemed to be a third party, entitled to protection as a *bona fide* purchaser in the absence of proof to the contrary. The public records required

by law to be kept show the taxes to be paid; and the property, in my opinion, is no longer subject to the lien. *Bromberg* v. *Kulp,* 398 Ill. 449, 454-455; *Jackson Park Hospital Co.* v. *Courtney,* 364 Ill. 497.