MOREY ENGINEERING & CONSTRUCTION COMPANY v. ST. LOUIS ARTIFICIAL ICE RINK COMPANY et al., Appellants.

In Banc, April 9, 1912.

1. **BENEFIT ASSESSMENT: Mortgage on Lot: Priority of Lien.** Under the charter of the city of St. Louis the lien of a special taxbill issued for a street improvement has priority over a deed of trust which antedates the taxbill.

*Held,* by KENNISH, J., dissenting, with whom VALLIANT, C. J., and LAMM, J., concur, that a special taxbill issued for a street improvement does not have priority over a preexisting deed of trust unless the lien of the taxbill is expressly or by fair inference given priority by the charter, and no such priority is found in the charter.

2. **TAXES ON REAL ESTATE: Prior Lien to Incumbrance.** General taxes on real estate constitute a prior lien against the property on which they are assessed, and that lien is not dependent upon any express statute to that effect. The holding is based on the uniformly recognized principle that the claim of the State for the taxes necessary for its support is superior to demands created by private contract.

*Held,* by KENNISH, J., dissenting, with whom VALLIANT, C. J., and LAMM, J., concur, that neither general taxes nor special taxes against real estate constitute a prior lien over an existing deed of trust unless such priority is expressly or by fair implication created by law.

3. ——: ——: **Owner.** The word "owner," in a statute providing that suits for delinquent taxes shall be brought against the owner of the land, includes the holders of incumbrances on the land.

*Held,* by KENNISH, J., with whom VALLIANT, C. J., and LAMM, J., concur, that the word "owner" does not embrace incumbrancers unless it is given that meaning by express statute or charter.

242 Sup.—16

4. **SPECIAL TAXES ON REAL ESTATE: Priority Over Existing Mortgage: Public Good.** Those decisions holding that benefit assessments are not taxes have reference to those constitutional limitations fixing a maximum rate of taxation or a maximum indebtedness. All taxes, whether general or special, are referable to the taxing power, and those decisions so hold. All taxes, whether for a street improvement or for the direct support of the State government, are exacted for the public good. The primary purpose of a tax to pay for a public improvement is not to benefit the lot against which the tax is assessed; it is for the public good. Such a tax is a lien upon the property charged therewith, and can be enforced by a lien against the owner, and the word "owner" includes incumbrancers. Such a tax constitutes a prior lien against the property against which they are assessed over a deed of trust antedating the taxbill, and that lien is not dependent upon any express statute or charter provision so declaring.

*Held,* by KENNISH, J., with whom VALLIANT, C. J., and LAMM, J., concur, that all the decisions holding that a lien for general taxes on real estate takes priority over an existing mortgage lien are based upon statutes expressly or by fair implication creating such priority, and, therefore, they are not authority for holding that a special taxbill for a public improvement is a prior lien over a pre-existing deed of trust in the absence of a charter or statutory provision creating such priority.

5. ———: ———: **Charter.** The provision of the charter of St. Louis, declaring that "the owner or any other person having an interest in the property charged with the taxbill may pay the same in full within thirty days after notice without interest," includes incumbrancers.

*Held,* by KENNISH, J., dissenting. with whom VALLIANT, C. J., and LAMM, J., concur, that when special tax liens are created they are not to be enlarged by construction, and the above words from the charter are clearly applicable to other interested persons, such as the contractor of a building constructed concurrently with the street improvement.

*Held,* also, that the word "owner" used in the language of the charter declaring that "said taxbill shall be and become a lien on the property charged therewith and may be collected of the owner of the land" does not include prior incumbrancers, is made apparent by the subsequent provision declaring that "in case the owner of the ground is a non-resident suit may be brought by attachment," for if "owner" means "mortgagee" then in all cases where the mortgage is held by a non-resident an attachment would lie against the property, even though the owner of the equity lived upon it.

6. ———: ———: ———: Construction: Objects to be At-
tained: Opinion of Bar and People. In construing a city charter
it is proper, in order to arrive at the intent of its framers, to con-
sider the objects they sought to accomplish and the practical
situation for which they were attempting to provide. It is also
true that a uniform construction of the city authorities, the
bar and the people at large for a long series of years is a
persuasive argument in favor of such construction.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse McDonald,* Judge.

AFFIRMED.

*H. A. Loevy* for appellants; *Rodgers & Koerner, Amici Curiae.*

(1) The charter lien of taxbill has no priority over the liens of the two deeds of trust. Everett v. Marston, 186 Mo. 587; Jaicks v. Silliman, 128 Mo. 183; St. Louis v. Clemens, 36 Mo. 394; Anderson v. Holland, 40 Mo. 373; Clemens v. Knox, 31 Mo. 197; Trust Co. v. Niggeman, 119 Mo. App. 62; 25 Cyc. 662, 678; 27 Cyc. 1176; 25 Am. and Eng. Ency. Law, 1235-7; 1 Cooley, Taxation, pp. 468-872; Elliott, Roads and Streets, secs. 543, 547, 599; Hamilton, Special Assessments, sec. 708; Rankin v. Scott, 12 Wheat. 177; Lyman v. Alley, 130 U. S. 177; Cook Case, 101 Ind. 446; Aetna Case, 117 Ind. 251; Pierce Case, 131 Ind. 284; Lovelace Case, 133 Ind. 600; Dana v. Woodruff, 51 Conn. 203; Bibbins v. Clark, 90 Iowa, 230; Brick Co. v. Smith, 108 Iowa, 307; Pittsburg's Appeal, 40 Pa. St. 457; Gormley's Case, 27 Pa. St. 49; Downey v. Mayor, 54 N. Y. 186; Harper v. Downey, 113 N. Y. 644; Tull v. Royston, 30 Kas. 617; Rogers v. Carrier, 13 Gray, 129; Seattle v. Hill, 14 Wash. 487; Green v. Tidball, 26 Wash. 338; Trustees v. Trenton, 30 N. J. Eq. 667; O'Neil v. Dresnger, 31 N. J. Eq. 507; Howell v. Essex, 31 N. J. Eq. 672; Allen v. Allen, 34 N. J. Eq. 493; Shotwell Case, 45 N. J. Eq. 106; Finn v. Hayes, 37 Mich. 63; Copeland v. Kehoe, 67 Ala. 594.

(2) Statutes of taxation are strictly construed and all doubts resolved in favor of taxpayer. 2 Suth. Stat. Const., sec. 537, p. 999. This is the rule as to special assessments for public improvements. 2 Suth. Stat. Const., p. 1011; 1 Cooley, Taxation, p. 468.

*Carter, Collins & Jones, David Goldsmith* and *Charles W. Bates* for respondent.

(1) Under the charter of the city of St. Louis, the special taxes in question are levied upon the property itself and the lien is, therefore, upon the entire title, including all interests therein, and is paramount to prior mortgages. Charter of St. Louis, art. 6, secs. 14, 25; Keating v. Craig, 73 Mo. 507; Corrigan v. Bell, 73 Mo. 53; Stafford v. Fizer, 82 Mo. 393; State v. Railroad, 77 Mo. 202; Jaicks v. Sullivan, 128 Mo. 177; Perkinson v. Meredith, 158 Mo. 457; Dresman v. Bank, 100 Ky. 571; Dresman v. Smirnia, 104 Ky. 693; Morey v. Duluth, 75 Minn. 225; Wabash Co. v. Commissioners, 134 Ill. 384; O'Dea v. Mitchell, 144 Cal. 382; Chase v. Trout, 146 Cal. 365; Tybaso v. Ft. Myers, 56 Fla. 817; Richmond v. Williams, 102 Va. 733; Norwich v. Hubbard, 22 Conn. 587; State v. Kilburn, 81 Conn. 9; Auditor v. Bishop, 161 Mich. 122; Dale v. McEvers, 2 Cowen (N. Y.), 118; Warner v. Van Alstyne, 3 Paige (N. Y.), 513; Clifton v. Cincinnati, 6 Am. Law Rec. (Ohio) 687; Morlein v. Westmeier, 4 Ohio C. C. 299; Corporation of Birmingham, L. R. 17 Ch. D. 782. (2) Special assessments or taxes for local public improvements are levied under the powers of taxation and are taxes, though not general taxes, is too well settled in this State to be open for argument. Garrett v. St. Louis, 25 Mo. 505; Meier v. St. Louis, 180 Mo. 408; Const. Co. v. Railroad, 206 Mo. 172. (3) The same language heretofore employed in the statutes providing that general taxes shall be a lien upon the property, occurs in the charter providing for the

special taxes in question; and it has been uniformly held by this court that that language creates a lien on the property paramount to all prior mortgages. Stafford v. Fizer, 82 Mo. 393; Keating v. Craig, 73 Mo. 507; State v. Railroad, 77 Mo. 220; Allen v. McCabe, 93 Mo. 138; Williams v. Hudson, 93 Mo. 529; Fleckenstein v. Baxter, 114 Mo. 496; Walker v. Mills, 210 Mo. 694; Meriwether v. Overley, 228 Mo. 250; Parker v. Baxter, 2 Gray (Mass.), 188; Osterburg v. Trust Co., 93 U. S. 428. (4) All persons who own property interests in the lots charged with the lien are the persons designated by the charter (sec. 25, art. 6) as the owners. Stafford v. Fizer, 82 Mo. 399; Longwell v. City, 69 Mo. Ap. 184; Morey v. Duluth, 75 Minn. 226; Railroad v. Scott, 38 S. C. 37; Hagerstown v. Grob, 101 Md. 560; Lawrence Co. v. Toll Co., 11 S. D. 74; Severni v. Railroad, 38 Ia. 463; Chouteau v. Thompson, 2 Oh. St. 114; Garrard v. Railroad, 14 Neb. 271. (5) The provision in section 25 of article 6 of the charter that the special taxes shall be collected of the owner of the land as any other claim in any court of competent jurisdiction, means by such process as is adapted to the enforcement of the lien on the lot. Barber Co. v. St. Joseph, 183 Mo. 451; Neenan v. Smith, 50 Mo. 525. (6) The provisions of the Kansas City charter, referred to in Keating v. Craig, 73 Mo. 507, and Corrigan v. Bell, 73 Mo. 53, to the effect that parties in interest might be made defendants in enforcing the lien and that those not made parties should not be bound by the judgment, were only declaratory of the law. Stafford v. Fizer, 82 Mo. 393; Perkinson v. Meredith, 158 Mo. 457; and do not differ in legal effect from the provisions in the charter of St. Louis. Perkinson v. Meredith, 158 Mo. 457. The question was not presented to the court for decision, but it is extremely doubtful if either Kansas City or St. Louis can lawfully enact, in their charters, provisions regulating practice in the courts, the rights of parties in

legal proceedings or the effect of judgments, especially as the general law, particularly the Constitution and the Code of Civil Procedure, covers the same matter. Do these provisions relate to municipal regulations? Badgley v. St. Louis, 149 Mo. 122; State ex rel. v. Tel. Co., 189 Mo. 83. (7) The mortgagees took their interests in the land subject to the charter provisions, which provided for assessment of the entire interests in the land, and they cannot complain when the valid tax is enforced against their interests that their property is being taken without due process of law. Provident Inst. v. Jersey City, 113 U. S. 506. (8) The only cases tending to support appellants' position are the early cases in Indiana and New Jersey. The later cases in Indiana sustain the earlier ones with expressed doubt, solely upon the basis of *stare decisis*. None of the other cases cited sustain appellants' position.

*Lambert E. Walther* and *Truman P. Young* for the City of St. Louis, *Amica Curiae.*

(1) The power to levy special assessments grows out of the taxing power of the State. It is only one method of exercising that power. Meier v. St. Louis, 180 Mo. 391; St. Louis v. Contracting Co., 202 Mo. 451; Garrett v. St. Louis, 25 Mo. 505. (2) The lien of general taxes is in its nature, in the absence of any express statutory provision, a lien superior to all pre-existing incumbrances. Osterberg v. Trust Co., 93 U. S. 424; Jack v. Weiennett, 115 Ill. 105; Stafford v. Fizer, 82 Mo. 393. (3) The same effect should be given the lien of special taxes. It is in its nature, without any express statutory provision so declaring, a lien superior to pre-existing mortgages, deeds of trust or other liens arising out of contract. It is an exercise of the sovereign power of the State, and necessarily binds the entire thing taxed, no matter what is the condition of the title. Keating v. Craig, 73 Mo.

507; Excelsior Springs v. Henry, 99 Mo. App. 450; Corrigan v. Bell, 73 Mo. 53; Wabash v. East Lake, 134 Ill. 384; Dressman v. Bank, 100 Ky. 571; Morey v. Duluth, 75 Minn. 221; Seattle v. Hill, 35 L. R. A. 372; Pittsburg's Appeal, 70 Pa. St. 142; Cities' Appeal, 41 Pa. St. 60; Ready v. Burke, 90 Cal. 1. (4) Suits upon special taxbills are proceedings *in rem*, and not *in personam*. Railroad v. East Lake, 129 Ill. 417; Neenan v. St. Joseph, 126 Mo. 89; Charley v. Kelley, 120 Mo. 134. (5) Even conceding that the lien of a special taxbill will not have priority unless the statute so declares, nevertheless the statute will be construed as giving the tax lien superiority even though it is not so stated in express terms. If the words of the statute, either by reference in terms or by reference to the general statutes, manifest a clear intention to make taxes assessed after the execution of a mortgage a prior lien, such paramount effect will be given them. Howell v. Essex, 32 N. J. Eq. 672; Thompson v. Thorp, 33 N. J. Eq. 401. This is true even in Indiana. State v. Ins. Co., 107 Ind. 251.

FERRISS, J.—This is an action brought in the circuit court of the city of St. Louis by the contractor to whom the city of St. Louis issued a special taxbill, for the improvement of Cook avenue, for the sum of $721.31, against a lot of ground on said Cook avenue, charged with said special taxbill. The defendants (appellants here) are the St. Louis Artificial Ice Rink Company, owner of the equity of redemption in said lot, together with the owners and holders of certain notes secured by two deeds of trust upon the said lot, and their trustees. The first deed of trust was dated November 1, 1898, and recorded on the 5th day of November, 1898, securing the payment of fifteen thousand dollars with interest; the second deed of trust was for two thousand and sixty dollars, executed

on the 14th day of July, 1900, and duly recorded on the same date.

The ordinance for the improvement of Cook avenue, for which the taxbill in question was issued, was approved April 7, 1902, and the taxbill was issued May 7, 1903.

Judgment below was for plaintiff. The record presents a single question: Under the charter of the city of St. Louis, has the lien of a special taxbill, issued for street improvements, priority over a deed of trust which antedates the taxbill?

Defendants contend that tax liens, whether general or special, have no priority over earlier incumbrances, unless such priority is accorded by statute, and that this is certainly true as to special tax assessments for street improvements, which, it is claimed, are essentially different from general taxes. Defendants contend further that the charter under which the taxbill in controversy was issued does not give priority to the lien for the special tax, and that it is therefore inferior to the lien of their deeds of trust which are earlier in point of time. On the other hand, respondent contends that in this State both general and special tax liens have priority, (a) in the absence of statutory direction to the contrary, and (b) such priority of the special tax lien is fairly inferable from the language of the statute (charter) creating the lien. We will discuss these propositions in order.

First, as to general taxes. From an early date this State has maintained the policy of impressing upon real property a lien for the taxes assessed thereon. In 1815 the Territorial laws provided that the taxes on confirmed lands should be a perpetual lien. [Territorial Laws, 1814-15, p. 89.] In 1820, a perpetual lien was declared by statute upon all lands for the taxes thereon. [Laws 1820, p. 97.] To the same effect in 1835. [R. S. 1835, p. 541.] The revisions of 1845-55-65 contain no such express provision, but

the revenue acts from 1835 to 1872 have been construed to recognize and reserve this lien of the State. The general revenue law enacted in March, 1872, re-introduced the express provision reserving to the State a lien upon real property for the taxes thereon. [Wagner's Statutes 1872, p. 1170, sec. 60.] From its earliest decisions on the question this court has uniformly ruled that real estate taxes are a lien upon the property against which they are assessed, and further, when the question has arisen, that they are prior to all other liens. In May, 1877, our Legislature enacted a statute (now section 11499, R. S. 1909) making the judgment for such taxes a first lien. The decisions, however presently to be referred to were upon taxes levied prior to the enactment of this statute, upon which they in nowise depend, and to which no reference is made in the cases.

In 1864, in the case of Blossom v. Van Court, 34 Mo. 390, the taxes were said to be an incumbrance on the land, and covered by the covenant contained in the words "grant, bargain and sell." McLaren v. Sheble, 45 Mo. 130, is to the same effect, and speaks of the "lien of the tax *imposed by virtue of the assessment.*" Both cases hold that the lien of the tax takes effect from the initial point of the assessment, and by virtue of the assessment.

We come next to the case of Stafford v. Fizer, 82 Mo. 393. As this case is discussed fully pro and con by appellants and respondent, we will examine it at length. This was an action in ejectment. James A. Clark, the common source of title, executed a deed of trust in 1863. In 1878 suit was filed by the State for the taxes for the years 1868 to 1876 inclusive. Sale under judgment for taxes and execution thereon October 30, 1878, to plaintiff. There was a sale under the trust deed in April, 1879, to the defendants. This suit was filed in 1880. In the tax proceeding, Clark, the trustee, and one of the beneficiaries in the trust deed,

were made defendants.  One other beneficiary was not
made a defendant.  It was contended by the plaintiff
that the tax sale gave a complete title as against both
beneficiaries in the trust deed.  The court states the
question presented for adjudication thus: "Whether
the deed of a purchaser at execution sale under a pro-
ceeding to enforce the State's lien for taxes is good
against the beneficiary of a deed of trust, antedating
the origin of the tax lien, who has not been made a
party to the proceedings."  After stating further that
the question was new in this court, the opinion pro-
ceeds: "But the principles of law, as well as the de-
cisions of this court, governing the enforcement of
liens on real estate, ought to furnish a sufficient guide
for us in determining it.  It will be observed that we
are dealing with two liens, one created by law in
favor of the State which necessarily takes precedence
of other prior as well as subsequent liens, on account
of its peculiar character (R. S. 1879, secs. 6831, 6832;
Blossom v. Van Court, 34 Mo. 390; McLaren v. Shie-
ble, 45 Mo. 130; Dunlap v. Gallatin Co., 15 Ill. 7; Almy
v. Hunt, 48 Ill. 45; Binkert v. Wabash Ry. Co., 98 Ill.
205); the other in favor of creditors, created by the
act of the debtor.  These two liens have been fore-
closed, and the purchasers stand opposed to each other
with deeds under the proceedings respectively em-
ployed for enforcing them.  The lien of the State is
the superior one, although subsequent in time, a su-
periority invariably accorded to it in the absence of
some legislative declaration to the contrary.  [Cad-
mus v. Jackson, 52 Penn. 295; Doane v. Chittenden,
25 Ga. 103; Hopper v. Malleson, 16 N. J. Eq. 382;
Cooper v. Corbin, 105 Ill. 224.]  No system of juris-
prudence would command respect which failed to main-
tain and enforce the benefits of this priority by all
necessary and reasonable proceedings to that end."
The holding of the court is that a beneficiary in .a
prior deed of trust, who is not a party to the tax suit,

has still the right to redeem as a *junior lienor* by proper action in that regard. Speaking of the revenue law which required the collector to bring suit against the *owner of the property,* the court says: "I do not see how to escape the conclusion that a *cestui que trust* in a deed of trust is an owner within the meaning of this act if his interests are to be affected by the proceeding authorized." It was concluded in that case that, in as much as the right to redeem was not asserted, and as it was apparent that plaintiff had the superior title, she should recover.

It is suggested that what the court says in the first above extract from the opinion as to the priority of the lien, and upon the general rule of priority, is *obiter.* We think not. The plaintiff's right to recover depended upon the priority of the tax lien. It is further suggested that the cases cited in the opinion do not support the text. In this we think counsel errs. It must be remembered that when the taxes involved in the case were assessed there was no statute making a judgment for taxes a first lien. Indeed, there was no express declaration in the statutes that the taxes were a lien. The court cites the Blossom and McLaren cases, above referred to, which declares that such taxes were a lien, and that such lien was impressed by virtue of the assessment. The next citation is Dunlap v. Gallatin Co., 15 Ill. 7, which says: "A tax is not an ordinary debt. It is levied for the support of the government and takes precedence of all other demands against the owner. It is a charge upon the property, without reference to the matter of ownership. The property itself may be seized and sold, although there may be prior liens or incumbrances upon it."

The next cited case, Almy v. Hunt, 48 Ill. 45, involved the question of liability for taxes as between seller and buyer. It was held that the lien attaches

when the assessment is made, and that the property itself is liable therefor.

Binkert v. Wabash Ry. Co., 98 Ill. 205, the next cited case, holds that the tax suit is "a direct proceeding against the land itself, by which judgment may be had against it as if it were a person," and points out the distinction between real and personal taxes; the latter not authorizing a direct proceeding against personal property.

The cases of Cadmus v. Jackson, Doane v. Chittenden, and Hopper v. Malleson, cited in the opinion, hold the tax liens involved in these cases inferior to prior liens, but this upon the ground that they are made so by statute. In the Hooper (N. J.) case the ruling that the lien of the tax is inferior to that of the prior incumbrance is put upon the ground that the statute makes the tax on real estate a personal demand against the owner, to satisfy which his goods may be sold or his body arrested, and further, that the mortgagee is taxed for his interest, and the mortgagor taxed separately for the value of his equity. The opinion says: "If the tax for the whole value of the land were assessed upon the land as an entire thing, against the mortgagor, or party in possession, there would seem to be more propriety in subjecting the entire estate, including both the interest of the mortgagee and mortgagor, to the operation of the tax sale."

The last case cited in the Stafford case, Copper v. Corbin, 105 Ill. 224, holds taxes on personalty an inferior lien, but that taxes on real estate "become a charge upon the land itself, and if they are not paid the land may be sold for the taxes thereon, and the title will pass regardless of any incumbrance resting upon the land. Taxes on personal property rest upon a different principle—they are not a charge on any specific property."

The foregoing cases sustain the proposition laid down in the Stafford case, namely, that real- estate taxes are accorded a prior lien by virtue of their peculiar character, unless there is a legislative declaration to the contrary. The Stafford case has not been criticised, but has often been approved in our later decisions. It is followed in Gitchell v. Kreidler,. 84 Mo. 472, which gives priority to the lien for the taxes of 1877 (assessed August 1, 1876), but holds, as the Stafford case did, that the beneficiary in the prior deed of trust, not being a party to the suit, did not lose his right to redeem. The case holds that all parties in interest must be made defendants in order to bind their interests. Construing the statutory requirement that suit shall be brought against the owner, the court says the word "owner" has no precise legal signification, and may be applied to any well defined interest in the estate, and further: "The lien of the State thus enforced is superior. The mortgagee certainly had the right to pay off taxes, and under the former method of making sales could have redeemed within the time prescribed by law. He has not been made a party to the tax suit, and his rights in that respect have not been foreclosed." Williams v. Hudson, 93 Mo. 524, involved similar questions regarding the taxes for 1869 to 1879, and followed the above cases. In the course of the opinion the court says: "Tax liens, whether prior in point of time or not, are superior to the lien of the deed of trust."

To the same effect is Allen v. McCabe, 93 Mo. 138, involving taxes for 1876, 1877 and 1878, wherein the court says: "It must be remembered that, although the statute makes it necessary that the owner of the property should be made a party, and this is necessary to call into activity the jurisdiction of the court over the subject-matter, yet, when this is done, the proceeding is *in rem* against the property to enforce the lien of the State on that property, subordinate to

which the owner holds his title; the judgment is *in rem*. The execution goes against, and the sheriff sells, the property, and not the interest of any particular person in it."

In Neenan v. City of St. Joseph, 126 Mo. 96, the contest was between owners of the fee, and did not involve incumbrances. The court, however, uses this significant language: "The policy of the revenue law is to charge the land and every interest therein with delinquent taxes, and not to look to the owners, personally, for its payment." This doctrine is quoted with approval by GRAVES, J., in Walker v. Mills, 210 Mo. l. c. 694, a case involving both owner of the equity and the incumbrancers.

In Meriwether v. Overly, 228 Mo. 218, the decree ordered the successful plaintiff in an action to quiet title to refund to the defendant taxes paid by the latter, on the theory that same were a burden upon the land. The court says: "A tax against real estate is a tax against the property, and not against the owner. If the taxes have been legally assessed they became a lien on the property *prior to all other* liens."

It will be perceived from the foregoing review of the cases that, under all the varying revenue laws of the State, this court has held that real estate taxes constitute *ex propria vigore* a prior lien against the property on which they are assessed, not depending upon any express declaration of the statute to that effect, and not depending, as it is now claimed they do, upon the provision in the statute first enacted in April, 1877 (Laws 1877, p. 387), which gives the judgment for taxes a first lien. The foregoing cases further establish the proposition that the word "owner," in a statute which provides that suits for delinquent taxes shall be brought against the owner of the land, includes the holders of incumbrances on the land.

Our conclusion on this point rests as well upon sound reason. It is uniformly recognized that the claim of the State for the taxes necessary for its support is superior to demands created by private contract. In State of Minnesota v. Central Trust Co., 36 C. C. A. 214, THAYER, J., discusses this subject fully upon authority and reason. He cites numerous cases to sustain the proposition which he enunciates thus: "It has been held frequently that a tax lawfully imposed by the State on its citizens is not an ordinary debt, but is an obligation which by its very nature should be regarded as paramount to all other demands against the taxpayer, although the law imposing the tax does not in express terms declare such priority." And then he says: "These decisions also express a thought which is generally prevalent in the public mind that taxes levied by the State for its own support are founded upon a higher obligation than other demands. The fact has also been recognized from time immemorial that every sovereignty ought to be armed with the requisite power to enforce the collection of taxes without fail, and to compel the prompt payment of whatever imposts it sees fit to levy for its own support. In view of that necessity it has been a common practice to provide summary remedies for enforcing such demands, which have been upheld by the courts whenever assailed, although it is quite probable that some of the remedies so provided could not have been sustained as affording due process of law, if the proceedings had related to the collection of purely private debts."

This thought is in line with what is said by the Supreme Court of Illinois in Dennis v. Maynard, 15 Ill. 477: "All the principles applicable to the prerogative priority of the crown in this respect equally apply to public dues for taxes."

It is said that even if the foregoing views as to general taxes are correct, they cannot be made to ap-

ply to special taxes or assessments for improvements of the character in question in this case. The question, then, is whether the principles enunciated above apply to special as well as general taxes. Both are created by the sovereign power of the State. The distinction between them has been often discussed in our former opinions. Some of these opinions say that, while created by the taxing power of the State, they are not taxes. [Morrison v. Morey, 146 Mo. 564; Independence v. Gates, 110 Mo. 374.] These cases, however, have in mind the general taxes referred to in certain constitutional limitations, which limitations, however, do not refer to these special taxes for local improvements. Speaking, in the above case of Independence v. Gates, of the power to levy local assessments, we say: "It is settled in Missouri, and generally elsewhere, that it is referable to the taxing power, although such assessments are not taxes in the sense that word is usually employed." Again, in Meier v. St. Louis, 180 Mo. 408: "It is now settled law in this court that special assessments for local improvements are referable to the taxing power." In Construction Co. v. Railroad, 206 Mo. l. c. 177, we say: "While a distinction is made between local assessments and taxes levied for general revenue purposes, in that an assessment for a local improvement is not a tax within the meaning of the constitutional provision regarding uniformity of taxation, it is in a sense a tax, not, however, for the purpose of sustaining the government, but imposed upon the individual property upon the theory that such property receives a special benefit different from the general one which the owner enjoys in common with others; in other words, an assessment for benefits."

As long ago as Garrett v. St. Louis, 25 Mo. 505, this court said: "That this assessment upon the lot-owners fronting on the street is an exercise of the taxing power seems too plain to admit of argument,"

This special tax is assessed because of special benefit to property, and yet there is also a public benefit. Indeed, it is this public benefit that justifies the exercise of the State's sovereign power. As said by Woodson, J., in St. Louis v. Wright Contracting Co., 202 Mo. 1. c. 463: "The tax is imposed for public purposes in the payment of street improvements, and not for private use. As an incident only to the public improvement the adjoining property is benefited, and because of that benefit the tax is assessed against the property and not against its owners."

So we are dealing with a tax, not a general tax to support the government, but a special tax imposed by the same general power, and for the same general purpose—the public good. General taxes are exacted for the public good. True, it is quite common to speak of them as being levied for the support of the government. This, however, is a too narrow limitation. Taxes are used for the public good in many ways other than government support, as for instance, public improvements and schools. Government exists for the public good, and it is for the public good that streets are improved and sewers constructed. The State could not compel a man to improve a street in front of his lot for the sole purpose of benefiting his lot. There is in such improvement a special benefit to the abutting lot. Therefore, the tax for such improvement may be greater upon that lot than it is upon the general property in the city, and hence we speak of this special tax as a benefit assessment. The abutting property is not taxed for the entire cost of the improvement. Section 18, article 4, of the St. Louis charter provides:

"The cost of construction of all the foregoing improvements within the city shall be apportioned as follows: The grading of new streets, alleys, and the making of crosswalks, and the repairs of all streets

242 Sup.—17

and highways and cleaning of the same, and of all alleys and crosswalks, shall be paid out of the general revenue of the city; and the paving, curbing, guttering, sidewalks, and the materials for the roadways, the repairs of all alleys and sidewalks, shall be charged upon the adjoining property as a special tax, and collected and paid as hereinafter provided.''

Here we have both general and special taxes levied by the same power, and both used for the same purpose, namely, making and maintaining a public street. There is no essential difference between them so far as concerns the questions under discussion. These special taxes are by section 18, above set out, charged upon the property—not against the owner. By section 25, article 6, of the charter, the taxbill is a lien upon the property charged, to be enforced by suit against the ''owner of the land.''

We have ruled above that as to general taxes a similar provision gives the lien priority over earlier incumbrances. We have also ruled that, as to general taxes, the word ''owner'' in a similar provision for suit against the owner of the land, must be construed to include incumbrancers. On principle, it would seem that the same ruling should be applied to these special taxes. The exigencies of government are as great as to the necessity for the tax and for its prompt and certain collection. The application of the rule of priority bears less hardly on the incumbrancer. The general tax benefits the property taxed but remotely and indirectly. The special tax is of direct benefit to the property, enhancing its value in proportion to the tax, and benefits the incumbrancer by adding to the value of his security. On this point the Supreme Court of Minnesota, in Morey v. City of Duluth, 75 Minn. 221, says: ''The improvement is for the benefit of all interests in the land, for that of the lien-holder as well as the fee-owner, and necessarily the lien of the assessment for the improvement must be coextensive with

the estate benefited and assessed.'' And further: ''It is apparent, however, from the provisions of the charter that the word 'owner' is not used therein in a strict sense, but it means persons interested in the land, which includes mortgagees.''

We have decided that a judgment for special taxes must be and can only be one enforcing the lien against the particular property. In Barber v. St. Joseph, 183 Mo. 451, we say: ''Proceedings to enforce special taxbills are in the nature of proceedings *in rem,* and compulsory payment of the judgment can only be made by a sale of the assessed property.''

The law governing the tax in this case is found in the charter of the city of St. Louis, which provides: ''Said taxbills shall be and become a lien on the property charged therewith, and may be collected of the owner of the land and in the name of and by the contractor as any other claim in any court of competent jurisdiction.'' [Sec. 25, Art. 6.]

Construed in the light of the case last cited, this means that the tax is a lien on the property, to be enforced by a proceeding *in rem* against the property. And, as ruled above, the word ''owner'' includes incumbrancers. So far as concerns the method of procedure provided in the charter, namely, to sue as upon any other claim in any court of competent jurisdiction, this must mean such suit ''as is adapted to the enforcement of the lien.'' [Barber v. St. Joseph, supra.]

That this tax is given priority inferentially by the charter is shown by the further provision in said section 25: ''That the owner or any other person having an interest in the property charged with the taxbill may pay the same in full at any time within thirty days after notice of the taxbill without interest.''

The clause, ''any other person having an interest in the property,'' certainly includes incumbrancers. This provision is meaningless unless it is designed

to enable incumbrancers to protect their interests by paying, without penalty, taxes to which their interests are subordinate. If their interests are not liable for the tax, why should they be referred to in connection with its payment?

The charter contains no provision making either the tax itself or the judgment a first lien; and yet we have seen that, without anything more in the general law than is found in the charter provision, general taxes have been held by this court to constitute a first lien.

These views are sustained by the case of Keating v. Craig, 73 Mo. 507. That case involved a special taxbill issued under the charter of Kansas City, section 3 of article 9 of which provides that in suits to enforce the lien of a special taxbill, all or any of the owners of the land charged, or of any interest or estate therein, may be made defendants, and that a judgment in such suit shall bind all the right, title, interest and estate in the land the defendants and each of them owned at the time the lien of the taxbill commenced, or acquired thereafter; and further, that parties interested in the land not made defendants shall not be affected thereby, and if they claim through or under any parties defendant prior to suit brought, they may redeem from the purchaser. It was held in the Keating case that the tax lien was prior to an earlier deed of trust. It is true that reference is made in the opinion to the foregoing charter provisions as indicating the intention of the framers to give it priority, but under the law as we have construed it in this opinion, and in the light of the former rulings of this court, cited herein, this provision of the Kansas City charter is simply declaratory of the law, and is no more indicative of the intent of the lawmakers than is the provision in the St. Louis charter allowing par-

ties owning interests in the property to pay the tax without penalty.

The Keating case says: "The lien of the special taxbill, like the lien for general taxes, is superior to any incumbrance with which the owner may charge the land." The opinion adds: "This is the evident meaning of that portion of section 3 above referred to, which declares the effect of a judgment in a special taxbill." No doubt, section 3 does mean that, and no doubt, under our decisions, the meaning of the law would be the same without section 3. Such evidently was the construction put upon the Keating case by NORTON, J., in his dissenting opinion in the case of State v. Railway, 77 Mo. l. c. 220. (In this there was no conflict with the majority opinion.) He quotes the above statement of the law from the Keating case in a discussion upon general taxes, and without any reference to the charter provision. In our judgment, there is as much warrant in the St. Louis charter for the rule declared in the Keating case as can be found in the Kansas City charter. That rule we approve.

It is urged by respondent that we should consider the exigencies of the case; that it is essential to the proper improvement of the city streets and sewers that special taxbills shall be first liens in order to insure their prompt and certain collection; further, that we should consider the fact that under the charter adopted in 1876, special taxbills have been always enforced as first liens, without question of their priority until now. The appellants object that such considerations ought not affect our conclusions as to the law. We appreciate the force of this objection, and yet in construing the charter, in order to arrive at the intent of the framers, it is proper to consider the objects which they sought to accomplish, and the practical situation for which they were attempting to provide. It was doubtless obvious to them that unless taxbills became first liens on property, the improvement of the

city would be seriously hampered. It is also proper to consider that, while the fact that a certain construction of the law has been usually recognized by the city authorities, the bar and the people at large does not establish its validity, still such fact is not without some persuasive force in favor of such construction.

This case has been ably and exhaustively briefed and argued on both sides. Counsel have cited the decisions in other jurisdictions on the question involved both as to general and special taxes. We have examined the cases in detail. To discuss them would extend this opinion to unreasonable length. The cases will be found in the digest of the briefs. They hold diverse views, but in our judgment the weight of authority as found in the decided cases supports the views herein expressed.

The judgment is affirmed. *Brown, Woodson* and *Graves, JJ.*, concur; *Kennish, J.*, dissents in an opinion filed, in which *Valliant, C. J.*, and *Lamm, J.*, concur.

## DISSENTING OPINION.

KENNISH, J.—The principles of law announced in the foregoing opinion, and upon which the case is decided, are so at variance with the conclusions arrived at by the writer after a thorough examination of the subject, as to require that I give expression to my views.

There is but one question in the case and that is, as stated in the opinion, "Under the charter of the city of St. Louis, has the lien of a special taxbill, issued for street improvements, priority over a deed of trust which antedates the bill?" Notwithstanding the singleness of the issue thus in judgment, the majority opinion, in deciding the case, states and affirms the following proposition: "In this State both general

and special tax liens have priority (a) in the absence of statutory direction to the contrary, and (b) such priority of the special tax lien is fairly inferable from the language of the statute (charter) creating the lien.'' In this case the litigants are private persons, one claiming under a trust deed taken as security for a loan when the property was clear and unincumbered, and the other claiming under a special taxbill for street improvements subsequently made. Neither the State nor any subdivision thereof is seeking to enforce a lien for general taxes levied for the support of the government, nor is even a party to the proceeding. It follows that no question as to the lien for general taxes is before us and any pronouncement as to the law applicable thereto cannot be authoritatively decided in this case. The two kinds of taxes, general and special, differ in many respects, and as there is an abundance of authority upon the one question in this case—priority as between the special taxbill and the prior incumbrance—it is difficult to understand wherein the issue to be decided is simplified by combining it with a proposition as to taxes not in anywise involved in this suit.

As to the two propositions (a) and (b) above referred to, it should be stated at the outset that if the special tax lien has priority in the absence of a statute to the contrary, that ends the controversy, for it is not pretended that such a statute exists under the facts of this case. If that contenion is sound law it is unnecessary, as it is inconsistent, to invoke the doctrine that such priority is fairly inferable from the provisions of the charter. On the other hand, if the priority of the special tax lien is fairly to be inferred from the charter, no issue of law remains, because appellants concede that if such priority is expressed in the charter or can be deduced therefrom by fair inference, then the lien of the special tax must prevail. The questions before us, therefore, are two: (1) Is the

special taxbill a superior lien over a pre-existing incumbrance, in the absence of a statute giving it such priority, and if not (2) does the charter fairly imply an intent to give such priority? I say fairly imply such intent, because there is no claim that it does so expressly.

Taking up these two propositions in their order, it should be observed that the first stated is not a question of first impression, to be reasoned out without the aid of adjudications and of those writers who have made a specialty of this branch of the law. Although there is an abundance of such authority in the books, as will be shown presently, it is noticeable that not a single text-book or writer upon the subject is cited (or can be cited) in support of the opinion of the court herein. The following excerpts will show the views of the great jurists who have written upon the subject:

"The general rule is that taxes are not a lien unless expressly made so; and when liens are expressly created they are not to be enlarged by construction. . . . Not only is it competent for the State to charge land with a lien for the taxes imposed thereupon, but the Legislature may, if it shall deem it proper or necessary to do so, make the lien a first claim on the property, with precedence of all other claims and liens whatsoever, whether created by judgment, mortgage, execution or otherwise, and whether arising before or after the execution of the tax. When that is done the lien does not stand on the same footing with an ordinary incumbrance, but attaches itself to the *res* without regard to individual ownership, and if enforced by sale of the land the purchaser will take a valid and unimpeachable title." [2 Cooley on Taxation, (3 Ed.), pp. 865-866.]

"The provisions of the statute determine the question of the priority between the lien of an assessment and other liens upon realty, if both liens are

created after the enactment of such statute. . . .
If it is so provided by statute, the lien of an assessment
may have priority over a lien which is earlier in point
of time, such as a mortgage lien. In some cases the
right of a mortgagee as against an assessment lien has
been discussed, but not decided. A statute may make
the lien of an assessment superior to the liens of exist-
ing incumbrances, since all property-owners hold in
subordination to the taxing power. In the absence of
a statute giving an assessment priority over an ear-
lier mortgage lien, an assessment has no such prior-
ity." [2 Page & Jones on Taxation by Assessment,
sec. 1068.]

"A lien for public taxes and assessments is upon
the property, and is paramount to all liens acquired
by personal contract, when so provided by statute.
. . . Although the lien of a prior recorded mort-
gage is superior to that of a special assessment, it is
within the power of the Legislature to change the rule,
and make the mortgage lien secondary to that of the
assessment." [Hamilton on Law of Special Assess-
ments, sec. 708.]

"There is no common-law rule which makes a levy
and assessment of taxes *ex proprio vigore* a lien on
property of the taxpayer. Such liens owe their exist-
ence wholly to statute; and their duration, limita-
tion and priorities, together with the property to which
they attach, must be determined by the statutes cre-
ating them." [27 Am. & Eng. Ency. Law (2 Ed.),
735.]

"Taxes and assessments levied upon land which is
already subject to a mortgage do not displace or out-
rank the lien of the mortgage in the absence of an ex-
press legislative declaration that they shall constitute
a paramount lien." [27 Cyc. 1176.]

"It is, for those reasons, often proper to deduce
from the general language of the statute giving a lien
the conclusion that it gives a paramount lien to which

mortgage estates or judgment liens must yield. But this conclusion cannot, perhaps, be inferred where no provision is made for giving those who hold such interests a hearing, and where there are no words declaring the superiority of the lien.'' [2 Elliott, Roads and Streets (3 Ed.), sec. 749.]

The learned author last cited, writing the opinion in the case of State ex rel. v. Insurance Co., 117 Ind. 251, and discussing the subject of the lien of a special tax created by statute, said:

''The statute does not declare that the assessment shall be a prior lien, but simply provides that the assessment shall 'be a lien from the date of filing the report of the commissioners.' [Acts of 1883, p. 173, sec. 5.]

''We do not doubt that it would have been within the power of the Legislature to provide by express words that the lien should have priority over pre-existing mortgages. [Provident Institution v. Jersey City, 113 U. S. 506.] But there is no such provision in our statute, and the question is whether the courts can put one there.

''We appreciate the force of the appellant's argument, but think it one that should be addressed to the Legislature rather than the courts. We can readily perceive that there are cases in which the adjudication in favor of the priority of a mortgage lien would seriously interfere with the prosecution of a work for the promotion of the public welfare, but the creation of liens and their incidents is a legislative matter, and the courts cannot create such liens. [1 Jones, Liens, secs. 97-112.]

''The statute must determine the character and extent of the lien. [1 Jones, Liens, sec. 105.] It is not necessary that it should in express terms declare that the lien shall be a paramount one, for if the intention can be gathered from the general words and purpose of the statute, the courts will give it effect.

The statute under consideration does not contain any provision indicating an intention to make the lien paramount to that of a pre-existing mortgage.''

These authorities, as might reasonably be expected from the fact that they so state the law, are supported by the weight of adjudications of the courts of last resort. We shall not encumber this opinion by citing the cases. They will be found in the footnotes of the foregoing works.

In the case of Everett v. Marston, 186 Mo. 1. c. 599, discussing tax liens, this court, quoting with approval from one of the above authorities, said: ''There is no common law rule which makes a levy and assessment of taxes *ex proprio vigore* a lien on the property of the taxpayer. Such liens owe their existence wholly to statute; and their duration, limitation and priorities, together with the property to which they attach, must be determined by the statutes creating them.''

Without admitting that a general tax due the State and a special tax due a private citizen stand upon the same footing as to priority, some reference should be made to the law of this State as to the liens for general and special taxes. It is provided by section 11499, Revised Statutes 1909, that the judgment for general taxes shall be a prior lien. Many other statutes expressly provide for the priority of a lien for special assessments and other taxes. See sections 11517, 11588, 9347, 9049, 9296, 9297, 5523, 5524, 5599, 5722 and 6267, Revised Statutes 1909. If the tax lien has priority of its own force and without the aid of any statute, it is plain that the Legislature did not so understand it. But it is said that the act making a judgment for general taxes a prior lien was passed in the year 1877, and that until then such taxes were uniformly given priority by the courts, without a statute so providing. The limits of this dissent preclude a discussion of all the various statutory provisions as to the lien for taxes during the history of this State,

but an examination of them has left no doubt that the law, by necessary inference, has at all times recognized the priority and dominant character of the statutory lien for general taxes. In the several revisions of the statutes the following appear:

Missouri Territorial Laws, 1804-24, vol. 1, p. 737, provides that a deed under a sale for taxes "shall vest in the purchaser, his heirs and assigns, all the right, title, claim and interest of the said lands (the right of the United States only excepted) to the part so sold." Revised Statutes 1835, pp. 542 and 543, provides that the lands upon which the taxes are not paid within the time prescribed "shall be forfeited to the State," and that a sale of such lands for taxes shall "convey to the purchaser all the right, title and interest of the State, in and to the land sold." Revised Statutes 1845, p. 948, speaks of lands on which taxes shall not be paid within the time prescribed as "forfeited to the State," and at page 952 provides that the register of lands shall "execute good and sufficient deeds of conveyance" to the persons purchasing lands at tax sales. Revised Statutes 1855, p. 1360, sec. 34, provides that the deed delivered to the purchaser at a tax sale "shall be prima facie evidence of title in fee simple." In the General Statutes of 1865, p. 127, it is provided that the tax deed "shall vest in the grantee, his heirs and assigns, the title to the real estate herein described." And at page 128, after providing that when lands offered for sale by the collector shall not be sold for want of bidders, the same shall be forfeited to the State of Missouri, it is said "and thenceforth all right, title and interest of every person whomsoever in and to such land or lot shall be considered as transferred to and vested absolutely in the State." In 2 Wagner's Statutes of 1872, p. 1197, it is provided that the collector shall give notice of an application to the court to sell lands upon which there are delinquent taxes. The form of notice is prescribed in the statute, and

begins as follows: "Notice is hereby given to all persons interested that the undersigned collector . . . will make application to the county court . . . for a judgment to enforce the lien of the State of Missouri against the tracts of land . . . described in the foregoing list and for an order to sell so much of said real property," etc. And at page 1199 it is provided that "any person interested in any of said lands or lots" may make a defense to the proceeding. The form of the judgment is also set out in the statutes, and concludes as follows: "It is further ordered, adjudged and decreed that the several tracts of land . . . severally be condemned and be sold to satisfy the same as the law directs."

From the foregoing it is clear that the law of this State always has recognized the priority of the State's lien for taxes, and it follows that the cases cited in the opinion of the court herein as holding the priority of the lien of general taxes, are merely in accord with the statutory law, and are not in point as supporting the doctrine that the lien of a special tax is a prior lien in the absence of a statute.

The case of Stafford v. Fizer, 82 Mo. 393, written by Commissioner MARTIN, is discussed at length in the opinion of the court herein, and announces the law (as to general taxes) that the tax lien is prior in the absence of a statute. The cases it cites do not warrant that conclusion. One of those cases is Hopper v. Malleson, 16 N. J. Eq. 382. The contest in that case was between a prior mortgagee and the the owner of a tax title acquired under a sale for taxes levied after the execution of the mortgage. The court held in favor of the mortgagee, saying in the course of the opinion, l. c. 386: "The power of the Legislature, by virtue of its sovereignty, to make the tax a charge upon the estate of all parties interested in the land, and to make the tax title paramount to all other and prior claims and encumbrances, is not questioned. But has that

power been exercised in the act under consideration? Was it the intention of the Legislature that the tax deed should operate to destroy all prior interests in the estate, vested or contingent, executed or executory, in possession or expectancy?"

Before passing from this branch of the case reference should be made to the case of Dressman v. Farmers' Bank, 100 Ky. 571, the leading authority relied upon by respondent. That a mistake was made in that case is placed beyond a doubt by the fact that although the sole question involved was priority as between the lien of a special assessment and that of an antecedent incumbrance, the court said: "The attention of the court has not been directed to an adjudicated case where the precise question involved in this appeal has been passed upon;" and cited in the opinion the very section of Elliott on Roads and Streets, supra, which states the law directly to the contrary.

The question remains, does the charter, by fair inference, make the lien of the taxbill prior to that of an existing mortgage?

The language of the charter is: "Said taxbill shall be and become a lien on the property charged therewith and may be collected of the owner of the land in the name of and by the contractor as any other claim in any court of competent jurisdiction," etc. It cannot fairly be said that this language indicates an intention to give priority to a special taxbill, but it is said that the word "owner," as used therein, was intended to include prior incumbrancers. That the word was not intended to have such meaning is evident. In the last sentence of the section it is provided that "in case the owner of the ground is a non-resident of the State, suit may be brought by attachment, which shall be equivalent to notice and demand of payment." The next section of the charter provides that "such certified taxbill shall in all cases be prima facie evidence  .  .  .  of the liability of the

person therein named as the owner of the land.'' If the mortgagee is an owner, why the necessity of an attachment simply because the owner of the equity happens to be a non-resident? Why not bring the suit in such case against the mortgagee? And as the foreclosure of the mortgage lien would carry full title, why make the owner of the equity a party at all? Again if owner means mortgagee, it follows that in all cases where the mortgage was held by a non-resident an attachment would lie against the property, even though the owner of the equity lived upon it. The charter provides in detail the procedure for the collection of the taxbill by suit, but nowhere recognizes the right of the holder of the taxbill to make a prior incumbrancer a party to the proceeding. It is also said that the provision of the charter that ''the owner or any person having an interest in the property charged with the taxbill may pay the same in full at any time within thirty days after notice of the taxbill, without interest,'' was intended to include prior incumbrancers and that by such language an intent is disclosed to give priority to the special tax. It is a matter of common knowledge that the building and improvement of property liable for the tax frequently goes on concurrently with the street improvement. In making such improvements, incumbrances may be placed upon the property by the owner, and liens of contractors or others, later in point of time than the taxbill, may exist. Such persons would be directly interested in the payment of the special tax, and the charter language would clearly be applicable to them. In view of the law as heretofore quoted from Cooley, that ''when liens are expressly created they are not to be enlarged by construction,'' it seems most unreasonable to hold that the language of the charter which is directly applicable to a class holding subject to the special tax was intended to subordinate the lien of a prior mortgage to that of a later special taxbill.

The case of Keating v. Craig, 73 Mo. 507, we are unable to understand in any other light than as authority against respondent. The case was almost identical in its facts with the case now before us, and the question for decision, as stated by this court, was: "Was the lien of the taxbill superior to the lien of the trust deeds?" This court then answered the question affirmatively and held in favor of the superiority of the lien of the taxbill, but the charter provision there construed and under which such ruling was made, was stated by the court as follows: "It is provided in section 3, article 9, of the city charter, that in suits to enforce the lien of a special taxbill, all or any of the owners of the land charged, or of any interest or estate therein, may be made defendants, and that a judgment in such suit shall bind all the right, title, interest and estate in the land that the defendants and each of them owned at the time the lien of the taxbill commenced or acquired afterward." That provision expressly authorized the joining of a mortgagee as a defendant and by so doing gave priority to the lien of the taxbill. But no such provision, or one remotely kindred to it, can be found in the charter under consideration.

In the course of the opinion in the Keating case, the court said: "The lien of the special taxbill, like the lien for general taxes, is superior to any incumbrance with which the owner may charge his land. This is the evident meaning of that portion of section 3, above referred to, which declares the effect of a judgment on a special taxbill." The court thus recognizes the priority of the lien for general taxes, which lien, as heretofore shown, was made prior by statute, and for a like reason holds the special tax a prior lien because made so by the charter.

The foregoing review of the law, it is submitted, shows an array of authority in favor of the position maintained by appellants which should be controlling

in the decision of this case. And on reason why should it not be so where the legislative body has not acted, when by acting it would have served notice on the public of the priority of such taxes? A person residing in a distant part of this State, or in another State, may loan his money on property which in his opinion is adequate security for the loan. Without any notice to him a special taxbill is issued against the property and is held by the contractor who made the improvement. Does this improvement increase the amount of the mortgagee's loan or his rate of interest? All he can claim is what he could have gotten without the improvement. Wherein is he benefited that he should be postponed to the contractor? As to the latter, if the improvement benefits the property to the extent of the tax, he has the equity of the owner and the enhanced value to secure his taxbill. And in any event he knows when he undertakes the contract exactly what security he must rely upon. If the legislative body desires a different rule it is always in its power to enact it. It has not done so under the facts of this case, and the judgment should be for the appellants. *Valliant, C. J.,* and *Lamm, J.,* concur in this opinion.