UNITED STATES v. LAND IN CITY OF ST. LOUIS, MO., PARCEL NO. 1, et al.

No. 2184.

District Court, E. D. Missouri, E. D.

Oct. 24, 1944.

Harry C. Blanton, U. S. Dist. Atty., of Sikeston, Mo., for plaintiff.

Herbert F. Hahn, of St. Louis, Mo., for defendant Greater St. Louis Corporation.

Harry Richards, of St. Louis, Mo., for defendant Gustav C. Volmer.

Phillip C. Wise, of St. Louis, Mo., for defendant Trinidad Asphalt Mfg. Co.

No appearance for remaining defendants.

DUNCAN, District Judge.

This controversy arises over the ownership of $2542.00 paid into the registry of the court by the United States for the taking of the east forty feet of Lots 32, 33, 34, 35 in Block 1 Glenmore Addition in Block 5579 in the City of St. Louis for public use.

Three of the defendants in the condemnation proceeding, Gustav C. Volmer, The Greater St. Louis Corporation and the Trinidad Asphalt Manufacturing Company by appropriate pleadings, each claims either the whole or a portion of the amount.

The lots taken were part of a tract owned by the Industrial Realty Trust Estate, a common law trust, of which Theodore N. Pepperling, J. F. Otto Reller and David A. Thomson were trustees. The Declaration of Trust was filed with the recorder of deeds on July 5, 1922, in the City of St. Louis.

On March 25, 1933, two of the trustees, apparently without the knowledge of the third, for a nominal consideration, executed a deed to Ivan E. Stuart to a tract of land belonging to the trust estate, of which the above described lots were a part. Ivan E. Stuart was a brother-in-law of the trustee Pepperling. Stuart immediately executed a deed to the Industrial Realty Trust Estate to all of the property which had been conveyed to him by the two trustees, but said deed was never placed of record, so that at all the times mentioned in this case, the record title to such property was in Ivan E. Stuart. It was admitted at the hearing that Stuart had no interest whatever in the property.

On November 6, 1931, a special benefit judgment was entered in the Circuit Court of the City of St. Louis in favor of the City of St. Louis, and declared a special lien against certain property belonging to the Industrial Realty Trust Estate, of which the lots involved in this controversy were a part, and thereafter such special improvement judgment was assigned to the defendant The Greater St. Louis Corporation.

On October 16, 1925, there were duly issued four special tax bills to the Trinidad Asphalt Manufacturing Company for street improvements. Such special tax bills were special liens against the property described in this proceeding for a period of ten years from the date thereof. The lien of such special tax bills was preserved through the filing of a suit in the Circuit Court of the City of St. Louis, which suit is still pending. The unpaid amount of such special tax bills, together with interest and court costs, is $646.73 and it is admitted by The Greater St. Louis Corporation that the lien of such tax bills is of equal dignity with the lien of its special benefit judgment.

The Industrial Realty Trust Estate failed to pay the general city taxes on certain lots owned by it, of which the lots herein described were a part, for the years 1931 to 1937 inclusive, and in November 1938 the Collector of the City of St. Louis at a public tax sale, sold such lots to defendant Gustav C. Volmer for the sum of $5871.75, the amount of the tax due on such lots.

On November 14, 1938, the Collector of the City of St. Louis executed and delivered a certificate of purchase to the said Gustav C. Volmer and thereafter on November 22, 1940 the Collector of the City of St. Louis issued a tax deed to the said Gustav C. Volmer. The property was sold under the provisions of the Jones-Munger Law, Laws 1933 pages 425–449, Section 11117 et seq., R.S.Mo.1939, Mo.R.S.A.

On November 5, 1941, at the request of defendant The Greater St. Louis Corporation, a special execution was issued and a sale held thereunder by the sheriff of the City of St. Louis and The Greater St. Louis Corporation became the highest bidder at said sheriff's sale of the lots described herein, and of certain other lots

which were the property of the Industrial Realty Trust Estate, and which had been sold at the tax sale to Volmer.

Following the sale of said property pursuant to the special execution, Volmer filed a motion in the Circuit Court of the City of St. Louis to quash the return of the sheriff. That motion has not been ruled on and is still pending in that court.

The defendant Gustav C. Volmer contends that the lien of the general taxes levied for the conduct of the government of the City of St. Louis was superior to any other lien, and that the tax deed conveyed such property to him in fee simple free and clear of the lien of the special improvement judgment of the defendant The Greater St. Louis Corporation, and the lien of the special tax bills of the Trinidad Asphalt Manufacturing Company.

The Greater St. Louis Corporation contends (1) that the sale of the property to Gustav C. Volmer was fraudulent, in that Theodore N. Pepperling, one of the trustees of the Industrial Realty Trust Estate, supplied the money for the purchase of said property at the tax sale, and that such purchase by Volmer was in fact for the benefit of the Trust Estate; and (2) that the price paid for said property by the said Gustav C. Volmer, especially for the four lots involved in this controversy, was so grossly inadequate and unconscionable as to amount to fraud, therefore rendering said tax sale void, and (3) that under the charter of the City of St. Louis the lien of the special improvement tax was prior to that of the lien of the general revenue tax, and that the tax deed was issued subject to such special improvement tax judgment, and (4) that as purchaser at the public sale under the special execution it acquired title in fee simple to the property.

In discussing the contention of the various claimants I shall begin with the first contention of The Greater St. Louis Corporation. That is, that Volmer was not the actual purchaser. The Trust Estate, as heretofore stated, owned a considerable amount of property. Most of it was unimproved vacant property platted into lots and blocks. The only revenue producing portion of the property was one lot upon which there was an old house producing about $6 a month rent, and that was not one of the lots involved here. The property was acquired by the Trust Estate for purely investment purposes, and all money required for the payment of taxes and other expenses was raised by assessments levied by the trustees upon the holders of the respective shares. The trustees Pepperling, Reller and Thomson each owned one-fifth of the total number of shares. At various times during the ownership of the property, assessments had been levied to meet obligations incidental to the ownership of the property.

Gustav C. Volmer was a cousin of Dr. Pepperling, and it was testified that Dr. Pepperling told Volmer of the proposed sale of the property for taxes. Volmer testified that he became interested in the purchase of the property believing that the Trust Estate would redeem it within the period of redemption, and that he would make a considerable profit through the payment of interest and penalties in the event of redemption. Both Dr. Pepperling and Volmer testified that there was no understanding between them as to the returning of the property to the Trust Estate, or any discussion as to redemption.

On the day the property was sold, Volmer was represented by counsel at the sale at the court house, and there was present among those assembled, Dr. Pepperling and probably another trustee, Reller. Volmer purchased thirty-eight lots for the sum of $5871.75 and this amount was paid to the Collector of the City of St. Louis.

Volmer testified that he obtained $4000 of the money from his safety deposit box and deposited it to his personal account in the bank, together with a check for $1871.75. He was not certain as to where the check came from. He did testify that he was accustomed to handling considerable sums of money for members of his family for investment purposes, and considerable sums for himself; that he kept considerable sums of money in cash in his safety deposit box for ready investment in case it was required. The exact amount of his bid at any rate, was deposited to his account to cover the check issued to the Collector of the City of St. Louis.

The Greater St. Louis Corporation contends that the money was not the money of Volmer, but in fact was provided by Dr. Pepperling, one of the trustees. This, both Dr. Pepperling and Volmer denied. The only evidence submitted by the defendant that in any wise casts any doubt upon the testimony of Volmer was the

daily record of the safe deposit company. The safe deposit company kept a record of the dates of entry of each person who entered the safety deposit vaults. That record did not show that Volmer entered the safety deposit vaults on the day that he contended he obtained the money from his box, but the record did show that he entered the vault four days later.

Defendant contends that this is a circumstance which, together with the fact that Volmer could not remember definitely where the $1871.75 check came from, should be considered by the court as proof of fraud and that Pepperling did supply the money. This, in face of the denial of both Volmer and Dr. Pepperling, and the testimony of Pepperling that he did not have that much money at any time, either in a bank account or in cash at any other place. There was no evidence whatsoever that Pepperling obtained any money from any source at or near the time of the transaction. In face of positive testimony to the contrary, the court cannot find that Pepperling furnished the money and that in fact Volmer was purchasing the property for the benefit of the trustees.

█ It is true of course, that fraud can rarely be proved by direct evidence. The well established general rule is quoted by Judge Douglas in Tobin v. Wood, Mo. Sup., 159 S.W.2d 287, loc.cit. 290:

"It is most frequently to be deduced from circumstances surrounding the transaction, and from the acts of the parties. Mere suspicion is not, however, sufficient. The fraud must be proved as an affirmative fact, and the proof must be of such a positive and definite character as to convince the mind of the chancellor, for it is never presumed; and, if the facts shown all consist as well with honesty as with fraud, the transaction should be held honest."

█ The testimony that Volmer did not enter his safe deposit box on the day he contended he did may have created suspicion as to the truth of his testimony, but in the absence of any other proof, showing that the money came from any other source, especially from Pepperling, the court cannot base a finding upon mere suspicion. Therefore, as to the first contention, the finding will be against The Greater St. Louis Corporation.

It is next contended by The Greater St. Louis Corporation that the purchase price paid by Gustav C. Volmer was so grossly inadequate as to be fraudulent, thus voiding the sale.

The tax sale was conducted in 1938, five years before the Government took over the property for war purposes. It was vacant property, unimproved except for one small house described heretofore, and that was not on the lots involved in this proceeding. The purchase price paid by Volmer for the four lots involved in this proceeding was $592.58. The Greater St. Louis Corporation contends that because the commissioners allowed $2400 for the taking of only forty feet of the four lots, the court should say that the $592.58 was so grossly inadequate as to indicate legal fraud and declare the sale void.

█ There was no testimony whatsoever upon the hearing to show the value of those lots in 1938 when there was no thought of the use of the lots for the purpose to which they were finally put. Of course, the general rule is that where the purchase price at a tax sale is so grossly inadequate and unconscionable it may amount to fraud and thus void. Bussen Realty Co. v. Benson, 349 Mo. 58, 159 S.W.2d 813. But the court certainly cannot say in the absence of any testimony as to the value of the property five years before the commissioners determined its value for use in connection with a war defense plant, that the sum of $592.58 was so grossly inadequate as to amount to fraud, and that contention is resolved against The Greater St. Louis Corporation.

That brings us to the last contention. That is, which of the liens, that of the general tax or that of the special improvement judgment and special tax bills, is superior.

The general taxes for the years 1931 to 1937 inclusive were duly levied on said lots by the City of St. Louis and were unpaid. The Jones-Munger Act of 1933 (now Section 11117 et seq., R.S.Mo.1939, Mo.R.S.A.), then applicable to the City of St. Louis, authorized the sale of such property.[1] The property was duly advertised and sold by the Collector of the City of St. Louis on November 14, 1938, in accordance with the provisions of the statute, and was purchased by the defendant

---

[1] The Jones-Munger Act of 1933, Laws of Missouri 1933 page 425 et seq., now Section 11117 et seq., R.S.Mo.1939, Mo. R.S.A., while in force and applicable during the period of time involved in the case at bar, was applicable to the City of St.

Gustav C. Volmer. The purchase price was paid to the Collector and a certificate of purchase was issued to Volmer in accordance with Section 11133, R.S.Mo.1939, Mo.R.S.A.

On November 22, 1940, a deed was issued to Volmer in accordance with Section 11149, R.S.Mo.1939, Mo.R.S.A., conveying to him "an absolute estate in fee simple, *subject, however to all claims thereon for unpaid taxes* except such unpaid taxes existing at the time of the purchase of said lands and the lien for which taxes was inferior to the lien for taxes for which said tract or lot of land was sold. * * * " (Italics supplied.)

The special improvement judgment was rendered pursuant to Section 8 of Chapter XXI of the St. Louis Charter, under which judgment in condemnation proceedings were rendered. The section provides:

"Section 8. The Court upon approving the commissioner's report shall render final judgment thereon reciting the report and adjudging that the City have and hold the property petitioned for, describing the same, for the purposes specified, upon payment of the damages less the benefits assessed in each instance; that so much of the report as is a judgment for benefits against specific property *be a lien on such property for ten years from entry of the judgment and prior to all other liens thereon;* and that the City recover the respective benefits in excess of the damages assessed in each instance against private property with interest from date of judgment and have execution therefor." (Italics supplied.)

█ It is a well recognized principle of law that the lien of a general tax for the conduct of municipal government is superior to the lien of a special benefit tax for special improvements in the absence of statutory provisions to the contrary. Morey Engineering & Const. Co. v. St. Louis Artificial Ice Rink Co., 242 Mo. 241, 146 S.W. 1142, 40 L.R.A.,N.S., 119, Ann.Cas.1913C, 1200; City of St. Louis v. Koch, Mo.App., 156 S.W.2d 1, loc. cit. 5; State ex rel. v. Hughes, 350 Mo. 547, 166 S.W.2d 516.

Were it not for the provisions of Article 8 of Chapter XXI of the St. Louis Charter that the judgment shall *"be a lien on such property for ten years from entry of the judgment and prior to all other thereon"* (italics supplied), there could be no question here as to the priority of liens. Article 8 of Chapter XXI of the St. Louis Charter, under which the special improvement judgment was rendered, and the Jones-Munger Act, Laws of Missouri 1933 (now Section 11117 et seq. R.S.Mo.1939) under which the property was sold and the certificate of purchase and deed were issued by the Collector of the City of St. Louis, have been before the appellate courts of Missouri in several cases, and in each of those cases the general principle of the superiority and priority of the lien of general taxes over those of special improvement taxes was sustained.

Nothing was done with the judgment of the defendant The Greater St. Louis Corporation from the time it was rendered on November 6, 1931 until November 5, 1941, nine days short of three years after the property was sold for delinquent taxes and on the very day the lien would have expired under the statute of limitation. On that date the City of St. Louis and its assignee The Greater St. Louis Corporation, by proper proceeding in the state court, sought and obtained the issuance of a special execution for the sale of the thirty-eight lots belonging to the Industrial Realty Trust Estate, and which had been sold for taxes on November 14, 1938.

The assignee became the purchaser at the special execution sale and contends that thereby it acquired title superior to that of Volmer. In that contention I cannot agree.

The lien of The Greater St. Louis Corporation's special benefit judgment was inferior to that of the lien for general taxes, but it was superior to the certificate of purchase held by defendant Volmer. The Greater St. Louis Corporation, by its purchase at the special execution sale, did not improve the order or standing of its lien. The certificate of purchase for taxes did not of itself pass title to the land. Such title remained in the record owner during the period of redemption. City of St. Louis v. Baumann, Collector, 348 Mo. 764, 153 S.W.2d 31. During the period of redemption, therefore, the title to the property being in the record owner, the purchaser at the execution sale acquired only

Louis only for a short period, it having been later amended so as to take said city and counties having a certain population out of the provisions thereof. See Section 11183, R.S.Mo.1939. Mo.R.S.A.

the title holder's rights and wiped out all junior liens, and thereby acquired the sole right to redeem the property during the period of redemption from the holder. of the certificate of purchase. City of St. Louis v. Koch, supra; State ex rel. v. Hughes, supra.

The case of City of St. Louis v. Koch, supra, decided by the St. Louis Court of Appeals in 1941 was almost identical as to facts and even as to the parties. That case went to the Court of Appeals on appeal from the order of the Circuit Court of the City of St. Louis overruling a motion to quash the return of the sheriff under a sale pursuant to a special execution, just as in this case. The property involved in the Koch case was owned by the Industrial Realty Trust Estate, as here; the special improvement judgment was rendered in the same condemnation proceeding on January 6, 1931 and assigned by the City of St. Louis to The Greater St. Louis Corporation; the property was sold on November 14, 1938, for the delinquent taxes for the years 1931 to 1937 inclusive, just as in the case under consideration; the property was sold under a special execution to enforce the lien of a special improvement judgment and The Greater St. Louis Corporation became the purchaser at the special execution sale. The only distinction between that case and this is that the holder of a deed of trust was the purchaser at the tax sale, and the special execution was levied and the property sold by the sheriff during the period of redemption. In affirming the action of the Circuit Court, the court used this language [156 S.W.2d 5]:

"While it is true the lien of the judgment of November 6, 1931, which was revived herein cannot be held to be prior or superior to the lien for general taxes on the property in view of the decisions of our Supreme Court (see Morey Engineering & Const. Co. v. St. Louis Artificial Ice Rink Co., 242 Mo. 241, 146 S.W. 1142, 40 L.R.A.,N.S., 119, Ann.Cas.1913C, 1200, and the many cases cited therein), nevertheless such lien was superior and prior to the deed of trust held by Buder as well as superior and prior to the tax sale certificate of purchase held by him after the sale for taxes. This by virtue of Section 8, Article XXI of the St. Louis Charter quoted supra, which specifically makes such a benefit judgment 'prior to all other liens thereon', except, as held in the Morey case supra, the lien for general taxes.

"The purchase of the property by appellant at the tax sale on November 14, 1938, cannot be set up by him to defeat the prior lien of the judgment of November 6, 1931 (which it will be remembered was a judgment in rem), held by respondent and its assignee growing out of the condemnation proceedings."

The statute determined who should be eligible to redeem from the tax sale and among those included were lien holders as well as record title holders. Section 11145, R.S.Mo.1939, Mo.R.S.A.

■ Under the above language, the holder of the judgment and the owners of the special tax bills, while their liens were inferior to that of the lien for general taxes, had the right to redeem during the period of redemption, and the certificate of purchase held by Volmer was subject to that right. However, neither of the defendants saw fit to do that during the two year period of redemption, nor did they make any effort to foreclose their liens until almost three years after the property was sold and eleven and a half months after the tax deed had been issued and delivered to Volmer, and because of their failure to protect their liens prior to the execution and delivery of the tax deed, their liens were wiped out, and that applies to both The Greater St. Louis Corporation and the Trinidad Asphalt Manufacturing Company. The lien of their special taxes being inferior did not fall within the exception of Section 11149, R.S. Mo.1939, Mo.R.S.A., providing that the tax deed shall be subject to the payment of certain taxes which are superior to the tax for which the sale was had and the deed was executed.

The case of City of St. Louis v. Koch, supra, went to the Supreme Court on writ of certiorari. Judge Douglas wrote the opinion of the court in State ex rel. Buder v. Hughes, 350 Mo. 547, 166 S.W.2d 516 and at loc. cit. 518 of 166 S.W.2d, stated:

"So far as an ordinary purchaser at a tax sale held under the Act is concerned, all inferior liens are foreclosed by the sale. Such liens are subject to reinstatement by redemption. See Gilmore v. Hibbs, 347 Mo. 1072, 152 S.W.2d 26. Therefore, assuming relator is an ordinary purchaser, so far as he is concerned the tax sale wiped out the judgment lien. If there

should be no redemption, relator would be entitled to a deed to the land freed of the judgment lien.

"While relator's interest as a certificate holder is superior, yet we might point out that the holder of the judgment lien may still proceed with his execution sale at least during the time for redemption. Respondents state in their opinion that the redemption period has not expired. Accordingly relator's interest as a certificate holder is subject to the rights of redemption of the record owner or of lien holders. The effect of the execution sale would be to transfer such title as remains in the record owner including his right to redeem from the tax sale. The execution sale would wipe out any liens junior to the judgment lien and the rights of redemption in their holders. A purchaser at the execution sale would necessarily take subject to the superior rights of the certificate holder."

In view of the foregoing, neither The Greater St. Louis Corporation nor the Trinidad Asphalt Manufacturing Company is entitled to any of the fund paid into the registry of the court, and the amount should be paid to the defendant Gustav C. Volmer. It is so ordered.