**COMMERCIAL CREDIT CORP.**
v.
**DAVIS.**
No. 8555.

United States District Court
W. D. Missouri, W. D.
Dec. 23, 1953.

Byron E. Mintoyne, Kansas City, Mo., for plaintiff.

Watson, Ess, Whittaker, Marshall & Enggas, Kansas City, Mo., for defendant.

REEVES, Chief Judge.

In support of its claim (in a considerable amount) against the defendant, the plaintiff sued out a writ of attachment conformable to the provisions of Rule 64, Federal Rules of Civil Procedure, 28 U.S.C.A. This rule provides, in substance, that the remedies by attachment under state law are made available in the federal court.

Adverting to a statute of Missouri: Section 521.010 RSMo 1949, V.A.M.S., relates to the general subject of Attachments and enumerates the causes for which an attachment writ may be issued, and by subdivision 7 of said section, the following is noted as a basis for issuing the writ:

"Where the defendant has fraudulently conveyed or assigned his property or effects, so as to hinder or delay his creditors".

Alleging that the defendant had conveyed certain personal property "so as to hinder or delay his creditors", the plaintiff instituted an action in this court and upon proper affidavit obtained a writ of attachment, and in pursuance of said writ summoned a number of parties as garnishees.

The defendant now by motion (formerly a plea in abatement) seeks a dissolution of the attachment and the garnishments by procuring an order vacating the original order for the writ.

The defendant sharply puts in issue the question whether he fraudulently transferred his property to hinder and delay his creditors as claimed by the plaintiff.

The hearing on a motion to vacate the order of attachment (or plea in abatement) was extensive. It may be gleaned from the broad record that the plaintiff and the defendant had carried on for a number of years an extensive creditor and debtor business. The defendant was an automobile dealer and it was the business of the plaintiff to finance automobile deals, such as those carried on by defendant. When the defendant obtained a franchise from a motor manufacturer, the plaintiff undertook to finance all sales of new cars to the defendant by paying the purchase price, and for that purpose it caused the defendant to execute a power of attorney whereby the plaintiff, through its officers and employees, could execute and take mortgages to itself.

Near the end of 1952 the motor manufacturer had on its hands a considerable number of 1952 model passenger cars. This, being near the end of the year, it sought to have its dealer distribute or

dispose of a large number of these models. The plaintiff paid for them, and, being authorized to have mortgages executed on such automobiles as its security, it did so, and then shipments were made to the defendant. Apparently these shipments were accepted and made at a time when the demand for such models was not great. The defendant, therefore, found himself overstocked with outmoded new automobiles. This action of the plaintiff was contrary to the spirit of any business orders given by the defendant and in violation of good business methods. The defendant was embarrassed but undertook to dispose of the automobiles mortgaged to the plaintiff for the purchase price.

The defendant found himself early in the year 1953 overloaded with stock or inventory, and in a desperate effort to dispose of 1952 model automobiles in the year 1953 he was compelled to employ expedients, such as making liberal terms to purchase and allowing larger trade-in values for secondhand cars that moved slowly on the market. By the chattel mortgages taken by the plaintiff the defendant was authorized to dispose of said mortgaged automobiles by the following language:

"Dealer may sell merchandise at retail *in its regular course of business, for not less than the respective Mortgage Debts mentioned above.*" (Emphasis mine.)

The dealer in this case was doing business under the trade name of Erwin Davis Motors. It was provided further, however, by the said mortgage that, upon sale:

"Dealer shall forthwith account for and deliver the proceeds thereof to Mortgagee, for application upon the Mortgage Debt in respect to Merchandise so sold, * * *."

By the middle of May 1953 the defendant was entangled with a heavy inventory of merchandise and with a threatened strike among his employees, including his salesmen, which matured early in June of that year. The defendant made many sales from the list of cars mortgaged in the manner above stated and did not "forthwith account for and deliver the proceeds thereof to Mortgagee." He used the proceeds, however, to prefer other creditors and did not appropriate the proceeds for his own use and benefit. The mortgages taken by the plaintiff had not been recorded, and, of course, under the law, such mortgages were not effective against other creditors of the defendant.

It does not appear from the evidence in any way that the defendant made the sales (which he had a right to do) with the purpose to hinder or delay his creditors. On the contrary, he made all the sales in the regular course of business and for a valuable consideration. He did not meet the obligation of his mortgage to pay over the proceeds to the plaintiff.

1. It is the general rule that a sale made in the ordinary course of trade does not warrant an attachment unless made with fraudulent intent. 7 C.J.S., Attachment, § 42, p. 222. There is not one line of testimony that these sales made in the regular course of business were made with a fraudulent purpose. Moreover, it was stated in Yellow Manufacturing Acceptance Corporation v. American Taxicabs, 344 Mo. 1200, 130 S. W.2d 601, loc. cit. 609, on a similar contention:

"However, that rule does not apply where the debtor does not conceal the consideration but uses all of it to pay debts, * * *."

2. In cases of alleged fraud there is a considerable burden upon the one who asserts fraud under the laws of Missouri. In Tobin v. Wood, Mo., 159 S.W.2d 287, loc. cit. 290, the Supreme Court of Missouri said:

" 'The fraud (alleged) must be proved as an affirmative fact, and the proof must be of such a positive and definite character as to convince the mind of the chancellor, for it is never presumed; and, if the facts shown all consist as well with

honesty as with fraud, the transaction should be held honest.' "

This principle was followed and approved by one of my associates, Honorable Richard M. Duncan, in United States v. Land in City of St. Louis, Mo., etc., D.C., 57 F.Supp. 601, loc. cit. 604.

The same ruling was enunciated by the Supreme Court in Weitzman v. Weitzman, Mo., 156 S.W.2d 906, loc. cit. 908:

"'Fraud is never presumed, but must be proved by clear and convincing evidence, and he who charges fraud has the burden of so proving it.' "

See also 37 C.J.S., Fraud, § 113, p. 426 et seq.

■ It follows that the motion of the defendant to vacate the order of attachment heretofore made should be sustained.